Thomas **DALLIO**, Petitioner–Appellant,

v.

Eliot L. **SPITZER**, New York State Attorney General, Michael McGinnis, Superintendent, Southport Correctional Facility, Respondents–Appellees.

Docket No. 01–2718.

United States Court of Appeals, Second Circuit.

Argued: Jan. 21, 2003.

Decided: Sept. 9, 2003.

William B. Carney, Legal Aid Society, Criminal Appeals Bureau, Brooklyn, New York, for Petitioner–Appellant.

Lisa Drury, Assistant District Attorney, for Richard A. Brown, District Attorney for Queens County (John M. Castellano, Assistant District Attorney, of counsel), Kew Gardens, New York, for Respondents–Appellees.

Before: NEWMAN, KATZMANN, and RAGGI, Circuit Judges.

Judge KATZMANN concurs with a separate opinion.

RAGGI, Circuit Judge.

Petitioner–Appellant Thomas Dallio is a New York State prisoner, serving a term of twenty-two years to life imprisonment as a result of his November 13, 1995 guilty plea to two counts of murder in the second degree, one for intentional murder, N.Y. Penal Law § 125.25[1], and one for felony murder, N.Y. Penal Law § 125.25[3]; one count of robbery in the first degree, N.Y. Penal Law § 160.15[2]; and one count of criminal weapon possession in the second degree, N.Y. Penal Law § 265.03. Dallio appeals from the November 1, 2001 judgment of the United States District Court for the Eastern District of New York (Frederick Block, *Judge* ) denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. *See Dallio v. Spitzer,* 170 F.Supp.2d 327 (E.D.N.Y.2001).

In his petition, Dallio asserted that his Sixth Amendment right to counsel was violated at a pre-trial suppression hearing when the trial court permitted him to proceed *pro se* without first giving him explicit warnings about the "dangers and disadvantages" of self-representation as required by *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). The district court agreed that the lack of such warnings violated the Sixth Amendment but concluded that the error was harmless. *Dallio v. Spitzer,* 170 F.Supp.2d at 336–38. We affirm the district court's judgment without reaching the question of harmless error. *See Boule v. Hutton,* 328 F.3d 84, 92 (2d Cir. 2003) (noting our ability to affirm a judgment on any ground appearing in the record, whether or not relied on by the district court). Although explicit warnings as to the dangers and disadvantages of self-representation are certainly advisable to ensure knowing and intelligent waivers of the right to counsel, *see Johnson v. Zerbst,* 304 U.S. 458, 468, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (holding that accused must "competently and intelligently" waive the right to counsel), we conclude that it is not clearly established federal law as determined by the Supreme Court, *see* 28 U.S.C. § 2254(d)(1), that such warnings are a constitutionally mandated prerequisite to every knowing and intelligent waiver of the right. Because Dallio does not assert that his waiver of counsel was not otherwise valid, nor would the record support such a conclusion, *see infra* at note 4, he fails to establish a right to habeas relief.

## I. *Background*

### A. *Dallio Admits Murdering Loni Berglund*

On January 10, 1986, in an apartment in Forest Hills, Queens, a young woman named Loni Berglund was killed by one gunshot wound to her chest and three to her head in the course of a robbery that netted its perpetrator fifty dollars. For more than five years, the crime went unsolved when, in May 1991, new computer technology matched fingerprints lifted from the murder scene to those of petitioner Thomas Dallio.

On October 15, 1991, two New York City police detectives, Timothy Copeland and Raymond Pierce, interviewed Dallio, who was then incarcerated on a 1988 New York State robbery conviction. After waiving his *Miranda* rights, Dallio agreed to speak with the officers and, over the course of several hours, made a series of inculpatory audiotaped and videotaped statements. For example, in a 12:30 p.m. statement apparently addressed to Ms. Berglund's mother, Dallio said:

> I'm very sorry what happened to Loni. She was a beautiful person who reached out to me. . . . We were in the apartment . . . . She said um it's getting late. I thought about going back out there into the street with no money, no drugs,

no place to stay. So I pulled out the gun and I asked her to sit on the couch and I asked her where the money was. She couldn't believe, she couldn't believe that I was serious. She says is this for real ... she said she didn't have any money. Then she got up like she was goin' for the door. She was goin' for the alarm and I fired first one time. She said something, she said okay, okay. I don't know, I just fired again and again and again.... I know that I can't bring her back. But I'm sorry an[d] I hope that you will forgive me, just like I ask God to forgive me.

Oct. 15, 1991 Tape Trans. at 13–14.

Approximately six months later, on April 8, 1992, Dallio volunteered further inculpatory statements. While being transported from prison to a police station where he would formally be charged with Ms. Berglund's murder, Dallio asked Detective Copeland about the likelihood of capital punishment in his case. When Copeland replied that petitioner could receive the death penalty, Dallio stated, "I killed her in a drug-crazed state. I didn't mean to do it. I think I should get manslaughter not murder." June 10, 1993 Hearing Trans. at 44. He further stated that his prior confession had been for the benefit of the victim's mother, "nobody else," and that but for his "confession and the prints," the police would have no case against him. *Id.* at 45.

### B. *The Hearing to Suppress Dallio's Inculpatory Statements*

### 1. *Representation by Defense Attorneys DiBlasi and O'Grady*

After indictment, Dallio moved to suppress his admissions to the police as involuntary custodial statements made in violation of his right to counsel. A seven-day hearing was conducted over the course of almost two years. On the first four hearing days, June 9–10, 1993, and September 14 and 16, 1993, Detective Copeland testified and was extensively cross-examined by Dallio's then-assigned counsel, Joseph V. DiBlasi. Dissatisfied with DiBlasi's performance, Dallio filed a *pro se* formal motion in 1994 for new counsel, whereupon John J. O'Grady was assigned responsibility for the defense.

When the suppression hearing resumed on March 30, 1995, O'Grady cross-examined Detective Pierce. An issue then arose about Dallio's desire to have Copeland recalled for further cross-examination. Addressing the court directly, Dallio cogently explained that he intended to testify at the hearing, that he understood that his credibility vis-à-vis the police officers would be critical to the court's decision, and that, for this reason, he deemed it imperative that Copeland be impeached with various inconsistent prior statements. The court agreed to have Detective Copeland recalled.

### 2. *Dallio Concludes the Hearing Pro Se*

On April 19, 1995, before Copeland resumed the witness stand, O'Grady advised the court that Dallio had advised him, after an "in-depth conversation," that he wished "to go pro se on this hearing." Apr. 19, 1995 Hearing Trans. at 63. O'Grady explained that Dallio felt "very familiar with the manner in which to proceed on this hearing, and how he want[ed] to handle Detective Copeland." *Id.* Acknowledging that Dallio might not have the competence of an attorney in conducting the hearing, counsel nevertheless voiced his opinion that Dallio was "competent to make [the] decision" to proceed *pro se. Id.* Dallio also addressed the court, reiterating his concern about the adequacy of prior counsel's cross-examination of Copeland and questioning present counsel's familiarity with certain materials and some of his strategic

decisions. *Id.* at 65–67. The prosecution accused Dallio of seeking to delay the case, whereupon the court inquired, "Are you ready to proceed now?" *Id.* at 68. When Dallio replied that he was, the court, without further discussion, permitted Dallio to proceed *pro se* with O'Grady serving as stand-by counsel.

Immediately, Dallio submitted a supplemental suppression motion to the court, explaining that he wished to ensure that "all grounds for suppression with particular specificity [were] raised and reserved on the record." *Id.* at 68. O'Grady noted that Dallio was acting against his advice, which petitioner confirmed. Dallio then proceeded to cross-examine Copeland, consulting with O'Grady from time to time, but nevertheless drawing frequent objections for interspersing his questions about the witness's prior statements with arguments about their inconsistency. Although the prosecution occasionally displayed exasperation, *see id.* at 76–77 ("Again, your Honor, this is not a proper line of questioning. The prior transcript is part of the record. And I think the questions that the defendant is asking illustrates his inability to go pro se in this matter."), the court did not, patiently listening as Dallio explained his theory of cross-examination, and even telling him to "[t]ake your time," *id.* at 88, until Dallio reported that he had no further questions for the witness.

Through O'Grady, Dallio requested and obtained court permission to take the stand and "testify in a narrative form," *id.* at 92, to the circumstances under which he had made incriminating statements to police authorities, an account that covers fifty pages of transcript. At the conclusion of Dallio's direct testimony, as well as at the conclusion of his cross-examination, the court asked O'Grady if he wished to pose any questions. Although counsel replied that he did not, O'Grady did ensure that Dallio had nothing more to say to the court

before leaving the witness stand. Counsel also noted (and the trial court acknowledged) that "during the course of the proceeding that my client went pro se, I was available to him[. W]hen he questioned Detective Copeland I assisted and although he testified on direct in narrative form[,] I was here and available for consultation." *Id.* at 176.

On the last hearing date, May 18, 1995, Dallio called two corrections employees, Donna Hunt and Scott Willis, to testify briefly to entries in prison records about petitioner's movements on October 15, 1991, which evidence Dallio believed was at odds with the accounts of Copeland and Pierce about the time of their interview. When the prosecution attempted to rebut this evidence with the testimony of Edward Carroll, the corrections officer who had actually escorted Dallio to the challenged interview, Dallio conducted the witness's cross-examination.

With the hearing thus concluded, Dallio addressed the court for over an hour in support of his suppression motion. Thereafter, the court inquired of O'Grady whether he wished to add anything. Counsel demurred, explaining, "I couldn't say it better." May 18, 1995 Hearing Trans. at 120. A few weeks later, on June 3, 1995, Dallio submitted a fifteen-page memorandum of law in support of his suppression motion, outlining six points with citations to legal authority.

On August 3, 1995, the trial court denied the suppression motion, ruling that Dallio's inculpatory prison statements were knowingly and voluntarily made after waiver of the right to counsel and that his subsequent inculpatory statements were spontaneous and not the product of police interrogation. *See People v. Dallio,* No. 1368–92 (N.Y.Sup.Ct. Aug. 3, 1995).

## C. *Dallio Obtains New Counsel and Pleads Guilty*

On June 27, 1995, even before the trial court ruled on his suppression motion, Dallio filed a motion for appointment of new counsel, which was granted by the court.

On November 13, 1995, Dallio's new counsel, Jonathan Latimer, advised the court that after extensive consultation, including discussions about the lost suppression motion and the admissibility of the inculpatory statements, Dallio wished to plead guilty. At no time during the allocution did counsel or Dallio (who addressed the court at length) challenge the suppression ruling or request a new hearing on the ground that Dallio had been permitted to proceed *pro se* without adequate warnings about the risks of self-representation. Neither was such a challenge raised at sentencing.[1]

## D. *Direct Appeal*

On direct appeal to the Appellate Division, Second Department, Dallio raised, among other challenges, the claim that his Sixth Amendment right to counsel had been violated by inadequate warnings at the suppression hearing. Citing *Faretta v. California*, 422 U.S. at 806, 95 S.Ct. 2525, as well as a number of decisions by the New York Court of Appeals, Dallio's new counsel, the Legal Aid Society, argued that no waiver of the right to counsel could be valid absent explicit warnings of the dangers and disadvantages of self-representation and that Dallio's failure to receive such warnings required that his conviction be vacated.

In affirming Dallio's conviction, the Second Department addressed petitioner's suppression challenge to his inculpatory admissions but summarily rejected as "without merit" all other arguments, including the claim of inadequate warnings about the risks of self-representation. *People v. Dallio*, 256 A.D.2d 417, 418, 682 N.Y.S.2d 233, 234 (2d Dep't 1998) ("The defendant's remaining contentions are without merit."). Counsel vigorously pursued the warnings point in a letter-memorandum seeking leave to appeal to the New York Court of Appeals. Leave was summarily denied on January 29, 1999, *see People v. Dallio*, 92 N.Y.2d 1048, 685 N.Y.S.2d 426, 708 N.E.2d 183 (1999), and, on March 19, 1999, the Court of Appeals denied Dallio's *pro se* request for reconsideration, *see People v. Dallio*, 93 N.Y.2d 872, 689 N.Y.S.2d 434, 711 N.E.2d 648 (1999).

## E. *Federal Habeas Petition*

On March 15, 2000, Dallio filed a timely federal petition for a writ of habeas corpus in the Eastern District of New York, challenging both the state court's denial of his suppression motion and its decision to allow him to proceed *pro se* without explicit warnings about the risks of self-representation. In a thoughtful and detailed decision, the district court ruled that the first point was without merit. *See Dallio v. Spitzer*, 170 F.Supp.2d at 338–40. As to the second point, after carefully reviewing relevant Supreme Court and Circuit precedent, the district court ruled that "[a]lthough ... there is no rigid procedure for

---

1. Section 710.70(2) of the New York Criminal Procedure Law, which preserves the right to appeal a final order denying a motion to suppress even after a guilty plea, provides an exception to the general rule that a defendant who pleads guilty thereby waives his right to appeal constitutional defects in criminal proceedings occurring before the guilty plea. *See*

*Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). Nevertheless, Dallio's failure to move for a new suppression hearing before pleading guilty is noteworthy because a new hearing might well be the only relief he could obtain if a federal court were to grant his habeas petition.

advising a defendant about the ramifications of proceeding *pro se, Faretta* requires, at a minimum, that there must be an explanation of the attendant dangers and disadvantages." *Id.* at 336. Because "[t]he trial court did not do this," and because "[t]he record is devoid of any indication that Dallio understood the dangers and disadvantages of the choice he was making," the district court concluded that the Appellate Division's rejection of Dallio's Sixth Amendment claim on its merits "amounted to an unreasonable application of clearly established Supreme Court law." *Id.* at 336–37.

Nevertheless, because Dallio had not been "den[ied] ... the assistance of counsel altogether," the district court concluded that the error was not "structural" and, therefore, not subject to *per se* reversal. *Id.* at 337 (citing *Lainfiesta v. Artuz,* 253 F.3d 151, 156–57 (2d Cir.2001) ("The Supreme Court has held that violations of the Sixth Amendment right to counsel are *per se* reversible only when they amount to an actual or constructive denial of the assistance of counsel altogether, or when counsel was prevented from assisting the accused during a critical stage of the proceeding." (internal quotation marks and citations omitted)) and *Coleman v. Alabama,* 399 U.S. 1, 10–11, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (directing harmless error review of Sixth Amendment deprivation of counsel at a preliminary hearing)). Applying harmless error analysis, the district court noted the following facts: (1) the majority of the suppression hearing had taken place before Dallio elected to proceed *pro se*; (2) during the testimony of key witnesses Pierce and Copeland, "Dallio had already received the benefit of counsel's skilled and thorough examinations;" (3) throughout the time Dallio proceeded *pro se* stand-by counsel was available to assist him; and (4) Dallio "ably represented himself" in questioning witnesses. *Id.* at 338. From these facts, the district court concluded that the trial court's failure "to warn Dallio of the dangers and disadvantages of proceeding *pro se* did not have a substantial and injurious effect on the outcome of the hearing" and that any Sixth Amendment violation was harmless error. *Id.*

Dallio moved this court for a certificate of appealability. On June 18, 2002, we granted the motion on the single issue whether Dallio's "right to counsel was violated because the trial court failed to advise [him] of the dangers and disadvantages of self-representation." *Dallio v. Spitzer,* No. 01–2718 (2d Cir. June 18, 2002).

## II. *Discussion*

### A. *Standard of Review*

██ Two standards are implicated in our review of habeas petitions filed pursuant to 28 U.S.C. § 2254. First, with respect to the district court's decision denying Dallio's § 2254 petition, our review is *de novo.* See *Cook v. New York State Div. of Parole,* 321 F.3d 274, 277 (2d Cir.2003). Second, with respect to state court rulings that underlie the habeas challenge, to the extent these rulings were made on the merits, our review is deferential as dictated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996). *See Jenkins v. Artuz,* 294 F.3d 284, 291 (2d Cir.2002) (and cases cited therein). The Act provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Feder-

al law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■ Our precedents instruct that to qualify as an adjudication "on the merits," a state court decision need not mention a particular argument or explain the reasons for rejecting it. *See Brown v. Artuz,* 283 F.3d 492, 498 (2d Cir.2002); *Aparicio v. Artuz,* 269 F.3d 78, 93–94 (2d Cir.2001); *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). Where, as in this case, "there is no basis either in the history of the case or the opinion of the Appellate Division for believing" that the claim at issue "was denied on procedural or any other nonsubstantive grounds," a terse statement that "remaining contentions are without merit" suffices to trigger AEDPA's heightened standard of review. *Id.*

Applying that standard to this case, we reject Dallio's argument that the state court's denial of his Sixth Amendment challenge to his *pro se* status at the suppression hearing "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d).

B. *Clearly Established Federal Law Does Not Mandate Explicit Warnings of the Dangers and Disadvantages of Self–Representation to Execute a Knowing and Intelligent Waiver of the Right to Counsel*

■ Dallio's habeas challenge to his *pro se* status for part of the suppression hearing implicates related Sixth Amendment rights: the right to counsel and the right to represent oneself. The right to counsel is explicitly safeguarded by the Sixth Amendment, which states that "[i]n all

criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. It is clearly established federal law as determined by the Supreme Court that no defendant can be convicted and imprisoned unless he has been accorded the right to the assistance of counsel. *See Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *see also Johnson v. Zerbst,* 304 U.S. at 467–68, 58 S.Ct. 1019, 82 L.Ed. 1461. Moreover, clearly established law applies this right to all "critical" stages of a criminal prosecution, including pre-trial hearings, *Maine v. Moulton,* 474 U.S. 159, 170, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) (and cases cited therein), without regard to whether the prosecution occurs in federal or state court, *see Gideon v. Wainwright,* 372 U.S. 335, 342–45, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

■ Although not expressly stated in the Sixth Amendment, a clearly established corollary to the right to counsel is the "right to dispense with a lawyer's help," *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942), and to represent oneself, *McKaskle v. Wiggins,* 465 U.S. 168, 174, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (referring to "the long-standing recognition of a right of self-representation in federal and most state courts"). In the leading case on the right of self-representation, *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, the Supreme Court vacated a state court conviction precisely because a defendant's request to proceed *pro se* was denied. The Court explained:

The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense.... Although not stated in the Amendment in so many words, the right

to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment.

*Id.* at 819, 95 S.Ct. 2525.

■ Although Dallio relies heavily on *Faretta* in support of his Sixth Amendment claim, his complaint is not that he was denied the right to self-representation. Rather, he asserts that his right to counsel was violated because the state court permitted him to proceed *pro se* at the suppression hearing without expressly warning him of the dangers and disadvantages of self-representation.[2] Clearly established federal law requires that a defendant's waiver of the right to counsel be knowing and intelligent. *See Johnson v.*

*Zerbst,* 304 U.S. at 464–65, 58 S.Ct. 1019, 82 L.Ed. 1461. The issue on this appeal is whether clearly established federal law dictates as a minimum constitutional prerequisite to a knowing and intelligent waiver of counsel that a court explicitly warn a defendant of the dangers and disadvantages of proceeding *pro se*. We conclude that it does not.

■ The only Supreme Court support for this proposition is language in *Faretta v. California* that a defendant waiving his right to counsel "should be made aware of the dangers and disadvantages of self-representation." 422 U.S. at 835, 95 S.Ct. 2525. Significantly, this quotation is not part of the holding in *Faretta,* but *dictum* in the case.[3] The Sixth Amendment viola-

**2.** Neither on direct appeal nor in his federal habeas petition does Dallio identify the specific dangers and disadvantages of self-representation at a suppression hearing about which he should have been warned. The omission is significant because the context in which a right to counsel is waived often determines what inquiry is necessary to ensure a knowing and intelligent choice. *See Patterson v. Illinois,* 487 U.S. 285, 298, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988) (noting that waiver of counsel at trial requires more searching inquiry than waiver during post-indictment questioning). The risks of self-representation at a suppression hearing do not equate to those at trial. A suppression hearing is usually a far less complex proceeding, often focusing on one or two discrete issues (e.g., defendant's receipt of *Miranda* warnings, the circumstances surrounding an inculpatory statement). More important, at a suppression hearing, a court can readily excuse a *pro se* defendant's evidentiary missteps and irrelevant legal arguments in a way a jury might not at trial.

In Dallio's case, not only was his self-representation limited to a suppression hearing, but also that hearing was half concluded before petitioner opted to proceed *pro se*. Dallio had been represented by two attorneys during the first half of the hearing; they had conducted thorough cross-examinations of key prosecution witnesses and discussed strategic choices with Dallio. Notably, Dallio's

decision to testify appears to have been made while he was still represented by counsel. In any event, that choice presented few risks since the prosecution could not have used Dallio's suppression testimony against him at trial, *see United States v. Salvucci,* 448 U.S. 83, 88, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) (citing *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)), unless he took the stand and testified to the contrary, *see United States v. Jaswal,* 47 F.3d 539, 543 (2d Cir.1995) ("[p]rior inconsistent suppression hearing testimony may properly be used to impeach a defendant during trial"), a remote possibility given Dallio's five prior felony convictions. Of course, even after Dallio opted to proceed *pro se,* the court provided him with stand-by counsel to consult about the relative dangers and disadvantages of potential strategies. Under these circumstances, there appear to be few, if any, specific dangers and disadvantages about which Dallio needed to be informed preliminary to making a knowing and intelligent decision to waive his right to counsel.

**3.** Our concurring colleague, Judge Katzmann, disagrees with our characterization of the quoted language as *dictum*. In his view, the Supreme Court would not have vacated the state judgment of conviction if it had not been satisfied that Faretta knowingly exercised his right to self-representation; thus, the Court's discussion of what constitutes a "knowing and intelligent" waiver of the right to counsel

tion specifically identified by the Supreme Court in *Faretta* derived from the state's refusal to allow the defendant to waive his right to counsel, not from any defect in his particular waiver. While "general expressions" of law by the Supreme Court that go beyond the actual decision in the case may well merit respect, *see Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399–402, 5 L.Ed. 257 (1821) (rejecting arguments based on *dicta* in *Marbury v. Madison* ), they do not constitute "clearly established law, as determined by the Supreme Court," for purposes of § 2254(d) review. As the Court itself instructed in *Williams v. Taylor*, "clearly established Federal law, as determined by the Supreme Court ... refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision." 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (internal quotation marks omitted); *accord Morris v. Reynolds*, 264 F.3d 38, 46 (2d Cir.2001).

In any event, we note that *Faretta*'s use of the word "should" in identifying warnings relevant to waivers of counsel itself cautions against interpreting the quoted language as clear establishment of a legal mandate. Although grammatically the word "should" is simply the past tense of "shall," *see Oxford American Dictionary and Language Guide*, 931 (1999), in the legal context, the two words often convey quite different meanings. "Shall" is universally understood to indicate an imperative or mandate, *see Black's Law Dictionary*, 1375 (6th ed.1990), whereas "should," to the extent it implies any duty or obligation, generally references one originating in "propriety or expediency," *id.* at 1379. Precisely because the word "should" is legally variable, *compare United States v. Anderson*, 798 F.2d 919, 924 (7th Cir.1986) ("[t]he common interpretation of the word 'should' is 'shall' and thus ... imposes a mandatory rule of conduct") *with Culbert v. Young*, 834 F.2d 624, 628 (7th Cir.1987) ("[t]he word 'should' unlike the words 'shall,' 'will,' or 'must,' is permissive rather than mandatory"); *and McDonnell Douglas Corp. v. Islamic Republic of Iran*, 758 F.2d 341, 347 (8th Cir.1985) (holding that "should" is a preferential rather than mandatory word and that contract provision stating that parties "should" settle disputes in a particular forum was not a mandatory selection clause),

"was essential to its conclusion that Faretta's constitutional rights had been violated." *Infra* at 566. We are not convinced. Given *Faretta*'s recognition of a constitutional right to represent oneself, the Court might well have vacated the state conviction and remanded the case even without a finding of a valid waiver of the right to counsel, for example, if the record had been ambiguous as to which of the two rights—the right to counsel or the right to self-representation—the defendant wished to invoke. In any event, although we recognize that, in *Faretta,* the Court did conclude that defendant's waiver of the right to counsel was knowing and voluntary, *see* 422 U.S. at 835, 95 S.Ct. 2525, and did cite the trial judge's warning to Faretta that self-representation was "a mistake" as supportive of that conclusion, *id.*, we do not understand every identification of a factor relevant to the assessment of a knowing and intelligent waiver of a constitutional right to establish the factor as a prerequisite to a valid waiver. *See, e.g., Schneckloth v. Bustamonte*, 412 U.S. 218, 232–33, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (holding that person's knowledge of his right to refuse a consent to search is a factor, but not "a necessary prerequisite to demonstrating a 'voluntary' consent"); *Willbright v. Smith*, 745 F.2d 779, 780 (2d Cir.1984) (holding that factual basis inquiry is "one way of satisfying the constitutional requirement that a [guilty] plea be voluntary and intelligent," but it is "not mandate[d]" by due process); *see also United States v. Medina*, 944 F.2d 60, 68 (2d Cir.1991) (citing six factors deemed relevant to determining if exigent circumstances support warrantless search, but noting that "[t]hese factors are merely illustrative, not exhaustive, and the presence or absence of any one factor is not conclusive").

we cannot infer from its use in *Faretta* the Supreme Court's recognition of a clearly established prerequisite for a waiver of counsel.

■ This conclusion is reinforced by the context in which *Faretta* discusses what "should" be made known to a defendant waiving his right to counsel:

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."

*Faretta v. California,* 422 U.S. at 835, 95 S.Ct. 2525 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. at 279, 63 S.Ct. 236). The citation to *Adams* suggests that *Faretta*'s reference to what "should" be done in making a waiver record is more properly viewed as a strong admonition than as a legal mandate. This is because *Adams* expressly cautions against using rigid formulas to determine the validity of constitutional waivers: "The task of judging the competence of a particular accused cannot be escaped by announcing delusively simple rules of trial procedure which judges must mechanically follow. The question in each case is whether the accused was competent to exercise an intelligent, informed judgment .... " 317 U.S. at 277, 63 S.Ct. 236. Indeed, the Supreme Court has repeatedly emphasized that a knowing and intelligent waiver depends on the totality of "facts and circumstances" in a given case, *Edwards v. Arizona,* 451 U.S. 477, 482, 101

S.Ct. 1880, 68 L.Ed.2d 378 (1981) (quoting *Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. 1019), and it has generally rejected arguments urging adoption of *per se* waiver rules based on any single factor, *see North Carolina v. Butler,* 441 U.S. 369, 374–76, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979) (declining to replace totality of circumstances standard for assessing knowing and voluntary waiver of right to counsel with an "inflexible *per se* rule" requiring such waivers always to be explicit).

Thus, while our court has strongly endorsed *Faretta* warnings as a factor important to the knowing and intelligent waiver of counsel, *see United States v. Fore,* 169 F.3d 104, 108 (2d Cir.1999) (noting, in case involving waiver of counsel at trial, that court "should conduct a full and calm discussion with defendant during which he is made aware of the dangers and disadvantages of proceeding *pro se*" (internal quotation marks omitted)), we have, at the same time, also rejected rigid waiver formulas or scripted procedures, *id.* at 107 ("district courts are not required to follow a formulaic dialogue with defendants wishing to waive their Sixth Amendment rights to counsel, and we decline to impose a rigid framework"), and emphasized that "knowing and intelligent" waivers depend on the totality of the circumstances, *id.* at 108 (because "'knowing and intelligent' waiver depends upon the particular facts and circumstances of the case and characteristics of the defendant himself," a trial court should "carefully consider defendant's education, family, employment history, general conduct, and any other relevant circumstances," (internal quotation marks omitted)).[4] To the extent this prec-

---

4. A number of our sister circuits follow a similar approach. *See Nelson v. Alabama,* 292 F.3d 1291, 1295 (11th Cir.2002) (interpreting *Faretta* to mean "that ideally a trial court should hold a hearing to advise a criminal defendant on the dangers of proceeding *pro se,*" but concluding that "failure to do so

... is not an error as a matter of law"); *United States v. Davis,* 269 F.3d 514, 518–19 (5th Cir.2001) (noting that although court "has consistently required ... *Faretta* warnings," there is "no sacrosanct litany for warning defendants against waiving the right to

edent appeared to send mixed signals, the able district judge concluded that *Faretta* warnings were a "minimum" requirement to ensuring a knowing and intelligent waiver of counsel. *Dallio v. Spitzer*, 170 F.Supp.2d at 336. Such a cautionary approach to counsel waivers would certainly be understandable, even laudable, were a district court itself addressing a criminal defendant intent on proceeding *pro se*. But in this case, our focus is only on

whether a state court's contrary ruling falls within the narrow scope of 28 U.S.C. § 2254(d).

■ Because neither *Faretta*'s holding nor its *dictum* clearly establishes that explicit warnings about the dangers and disadvantages of self-representation are a minimum constitutional prerequisite to every valid waiver of the right to counsel, and because there is no other challenge raised to Dallio's knowing and intelligent waiver of this right,[5] we conclude that the

counsel," and district courts must exercise discretion "[d]epending on the circumstances of the individual case"); *United States v. Lopez–Osuna*, 242 F.3d 1191, 1199 (9th Cir. 2001) (rejecting "use [of] a particular script" to assess knowing and intelligent waiver of counsel: "the focus should be on what the defendant understood, rather than on what the court said"); *United States v. Kind*, 194 F.3d 900, 904 (8th Cir.1999) (noting that district court's failure "specifically [to] warn[ ] the defendant of the dangers and disadvantages of self-representation" before allowing him to proceed *pro se* was not fatal if appellate court could discern from "entire record" that "defendant had the required knowledge from other sources"); *United States v. Hughes*, 191 F.3d 1317, 1323–24 (10th Cir. 1999) (holding that waiver of counsel "may be valid absent an inquiry by the court where the surrounding facts and circumstances, including the defendant's background and conduct, demonstrate that [he] actually understood his right to counsel and the difficulties of *pro se* representation and knowingly and intelligently waived his right" (internal quotation marks omitted)); *United States v. Singleton*, 107 F.3d 1091, 1097 (4th Cir.1997) (noting that counsel waiver requires evaluation of defendant's "complete profile . . . and the circumstances of his decision . . . from the record as a whole"); *United States v. Bell*, 901 F.2d 574, 576–77 (7th Cir.1990) (expressing "strong preference" for formal waiver inquiry, but rejecting reversal "where the record as a whole demonstrates that the defendant knowingly and intentionally waived his right to counsel"); *United States v. Hafen*, 726 F.2d 21, 26 (1st Cir.1984) ("Although the practice of issuing specific warnings to defendants who wish to proceed *pro se* is a good way . . . to insure that the requirements of *Faretta* are met, it is not the *only* way."). *But see United*

*States v. Peppers*, 302 F.3d 120, 133 (3d Cir. 2002) (requiring "specific forewarning of the risks that foregoing counsel's trained representation entails"); *cf. United States v. McDowell*, 814 F.2d 245, 249–50 (6th Cir. 1987) (although upholding waiver even where no formal *Faretta* inquiry made, court invokes "supervisory powers" to require district courts to follow model waiver inquiry from 1 *Bench Book for United States District Judges* 1.02–2 to 1.02–5 (3d ed.1986)); *United States v. Bailey*, 675 F.2d 1292, 1300 (D.C.Cir.1982) (similarly invoking supervisory powers to require courts to "mak[e] clear on the record" defendant's awareness of "the dangers and disadvantages of self-representation").

5. We cannot agree with Judge Katzmann that "[n]owhere in the record . . . is there even a glimmer" of evidence to support a knowing and voluntary waiver of the right to counsel by Dallio, *see Infra* at 567. The record reveals Dallio's considerable criminal history at the time he elected to proceed *pro se*—ten arrests and five felony convictions—which presumably gave him an above-average knowledge of his right to counsel. More to the point, Dallio knew that if he was dissatisfied with assigned counsel, he could ask the court to appoint another attorney. In making just such an application in May 1994, Dallio demonstrated a clear understanding of (1) the serious nature of the charges against him, *see* May 27, 1994 Aff. In Support of Motion for Reassignment of Counsel at 2, Exhibit A to Respondents' Aff. & Memo in Opp. to Habeas Petition (identifying specific charges); (2) the fact that a conviction would result in his serving "substantial . . . additional time in prison," *id.* at 5; and (3) the important role counsel could play in his defense, *id.* at 2 ("Defendant knows that being charged with

state court's rejection of Dallio's waiver claim was neither contrary to nor an unreasonable application of clearly established federal law and therefore he is not entitled to habeas relief.

### III. *Conclusion*

The judgment of the district court in favor of respondents is hereby AFFIRMED.

KATZMANN, Circuit Judge, concurring.

While I agree that we should affirm the District Court's judgment denying Dallio's petition for a writ of habeas corpus, I arrive at this conclusion through a different analysis. In my view *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), establishes clear federal law requiring that a defendant be aware of the dangers and disadvantages of self-representation in order to knowingly waive the right to counsel. Because there is absolutely no indication that Dallio comprehended these perils upon proceeding *pro se,* I conclude that his Sixth Amendment right to counsel was violated. I also conclude, however, that any constitutional violation endured by Dallio was harmless.

The majority opinion rests upon two bases. The majority first concludes that the *Faretta* Court's discussion of a criminal defendant's awareness "of the dangers and disadvantages of self-representation," *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525, was dictum and thus not entitled to deference under AEDPA. Maj. Op. at 562. Alterna-

tively, the majority concludes that the petition should be denied because a *Faretta* warning, which cautions against the perils of self-representation, is not clearly established as "a minimum constitutional prerequisite to every valid waiver of the right to counsel." Maj. Op. at 564. I respectfully disagree with each of these bases for affirming.

First, I cannot agree that *Faretta*'s discussion of what constitutes a valid waiver of the right to counsel was not determinative in that case, and therefore dictum. It is clear from *Faretta* that knowing and intelligent waiver was a necessary component of the disposition of Faretta's petition. The Court explicitly analyzed whether Faretta himself met the standard for voluntariness it had just set out:

> Here, weeks before trial, Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel. *The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. The trial judge had warned Faretta that he thought it was a mistake not to accept the assistance of counsel, and that Faretta would be required to follow all the "ground rules" of trial procedure.* We need make no assessment of how well or poorly Faretta had mastered the intricacies of the hearsay rule and the California code provisions that govern challenges of potential jurors on voir dire.

these serious crimes he must have a competent, caring, effective and energetic counsel for adequate preparation of his defense.").

The record further evidences Dallio's competency to make an intelligent waiver of counsel. In connection with another *pro se* submission, this time seeking dismissal of his indictment on speedy trial grounds, Dallio advised the court that he was pursuing a college degree while in prison, had maintained an "A" average, and was only two

semesters from graduation. *See* Mar. 30, 1994 Aff. in Support of Motion Pursuant to C.P.L. 210.20, 30.20 at 3, Exhibit B to Respondents' Aff. & Memo in Opp. to Habeas Petition. Dallio's intelligence was further evidenced by his articulate exchange with the trial court explaining his reasons for proceeding *pro se. See* Apr. 19, 1995 Hearing Trans. at 65–68. Finally, Dallio's decision was reached only after "in-depth" consultation with counsel. *Id.* at 63.

For his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself.

In forcing Faretta, *under these circumstances*, to accept against his will a state-appointed public defender, the California courts deprived him of his constitutional right to conduct his own defense.

*Id.* at 835–36, 95 S.Ct. 2525 (emphasis added). From this passage I think the conclusion is inescapable that if the Court had not been satisfied with its "assessment of [Faretta's] *knowing* exercise," it would not have vacated the judgment of the California Supreme Court. It was only because Faretta validly waived the right to counsel that the Court found that the trial court violated his right to counsel by not honoring that waiver. Thus, the Court's "knowing and intelligent" requirement was essential to its conclusion that Faretta's constitutional rights had been violated. It was, in other words, not "dictum." *See* Black's Law Dictionary 1100 (7th ed.1999) (defining "obiter dictum" (often shortened to "dictum") as "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)"); *see also id.* at 737 (defining "holding" as "[a] court's determination of a matter of law pivotal to its decision; a principle drawn from such a decision").

As to the majority's second basis for its holding—*Faretta* does not impose a legal mandate for warnings—I agree that *Faretta* does not compel a rigid formula for a colloquy between the trial judge and the defendant to advise of the dangers and disadvantages of self-representation.[1] *See, e.g., Torres v. United States,* 140 F.3d 392,

---

1. *See United States v. Fore,* 169 F.3d 104, 108 (2d Cir.1999) ("The district judge and defendant should engage in a colloquy on the record [regarding waiver of the right to counsel], but there is no scripted procedure for this discussion."); *United States v. Tompkins,* 623 F.2d 824, 828 (2d Cir.1980) (explaining that a recorded colloquy between the judge and the defendant is usually preferred, but not always required). Our sister circuits are split on whether a recorded hearing is required to assess the validity of a waiver of the right to counsel. *Compare United States v. Edwards,* 716 F.2d 822, 824 (11th Cir.1983) ("[T]he trial judge must conduct a hearing to ensure that the accused understands the dangers and disadvantages of proceeding *pro se.*" (citation omitted)), *United States v. Welty,* 674 F.2d 185, 193 (3d Cir.1982) (stating that "a defendant's waiver of counsel can be deemed effective only where the district court judge has made a searching inquiry sufficient to satisfy him that the defendant's waiver was understanding and voluntary"), *and United States v. Chaney,* 662 F.2d 1148, 1152 (5th Cir. Unit B 1981) ("[A] trial judge must conduct a waiver hearing to make sure that the accused understands the risks of proceeding pro se and that he 'knowingly and intelligently waives the right to counsel' before permitting the ac-

cused to proceed personally." (quoting *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525)), *with United States v. Keen,* 104 F.3d 1111, 1114–15 (9th Cir.1997) (noting that "preferred procedure" is for court to discuss impact of self-representation in open court, but that there are "limited exception[s]" to this practice "when the record as a whole reveals a knowing and intelligent waiver" (quotation marks and citation omitted)), *United States v. Bell,* 901 F.2d 574, 578–79 (7th Cir.1990) (holding that the defendant knowingly and intelligently waived his right to counsel even though the "exchange between the magistrate and [the defendant] was inadequate, standing alone, to inform [the defendant] of the dangers and disadvantages of self-representation"), *United States v. Torres,* 793 F.2d 436, 438 n. 5 (1st Cir.1986) ("Although the practice of issuing specific warnings to defendants who wish to proceed pro se is a good way-perhaps the best way-to insure that the requirements of *Faretta* . . . are met, it is not the *only* way." (quotation marks and citation omitted)), *and Fitzpatrick v. Wainwright,* 800 F.2d 1057, 1065 (11th Cir.1986) ("[W]hile a waiver hearing expressly addressing the disadvantages of a pro se defense is much to be preferred, it is not absolutely necessary.").

401 (2d Cir.1998); *United States v. Tracy*, 12 F.3d 1186, 1194 (2d Cir.1993). Where I part company with the majority is with respect to what *Faretta* and other Supreme Court decisions do require. In my view, there must be *some* basis in the record for us to conclude that the defendant was aware of the adverse consequences of proceeding *pro se*. The Court in *Adams v. United States ex re. McCann*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942), for instance, explained that a criminal defendant "may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open." *Id.* at 279, 63 S.Ct. 236 (citing *Johnson v. Zerbst*, 304 U.S. 458, 469, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)); *see Faretta*, 422 U.S. at 835, 95 S.Ct. 2525 (explaining that a criminal defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open'" (quoting *Adams*, 317 U.S. at 279; 63 S.Ct. 236)). The *Faretta* Court similarly advised that "in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits [associated with the right to counsel]." 422 U.S. at 835, 95 S.Ct. 2525 (citing *Johnson*, 304 U.S. at 464–65, 58 S.Ct. 1019).

The transcripts of the suppression hearings are devoid of any indication that Dallio knowingly and voluntarily waived his right to counsel. At the April 19, 1995 hearing, prior to the conclusion of the prosecution's case, Dallio voiced a desire to represent himself. After Dallio made several statements criticizing the quality of

his counseled representation, the following exchange with the trial judge ensued:

THE COURT: Are you ready to proceed now?

THE DEFENDANT: Yes.

THE COURT: You may proceed.

THE DEFENDANT: As pro se?

THE COURT: Take the witness stand.

(Tr. Apr. 19, 1995, at 68.) Dallio represented himself for the remainder of the hearing as O'Grady remained in the courtroom. The court's failure to advise Dallio of the dangers of proceeding pro se may have been rectified if the record indicated elsewhere that the defendant was making a knowing and voluntary waiver. Nowhere in the record, however, is there even a glimmer of such indication.[2]

On this point, I respectfully disagree with the majority's suggestion that the dangers of self-representation were trivial in this case. Maj. Op. at 561 n.2 ("Under these circumstances, there appear to be few, if any, specific dangers and disadvantages about which Dallio needed to be informed preliminary to making a knowing and intelligent decision to waive his right to counsel."). While it is true that at a suppression hearing before a judge, a *pro se* defendant does not face the danger of prejudice for incompetent performance which exists in front of a jury, other dangers of self-representation may be magnified. Suppression hearings often involve complex legal and evidentiary issues unfamiliar to a layperson. A typical defendant, who seeks to suppress evidence without the aid of counsel, in all likelihood would be largely unfamiliar with the proper evidentiary objections to make and legal arguments and strategies to advance.[3]

---

**2.** Dallio's attorney, John O'Grady, referenced an "in-depth conversation" with Dallio regarding his decision to proceed *pro se*, but there is no indication whether that conversation entailed explaining to Dallio the dangers and disadvantages of self-representation. (Tr. Apr. 19, 1995, at 63.)

**3.** Indeed, it appears that Dallio's self-representation at points was hindered by his ignorance of the proper legal rules under New York law. For instance, it seems that at times Dallio relied on the federal rules of evidence, rather than New York rules, and at one point the prosecutor commented to the court that

In addition, Dallio's self-representation was hardly minimal. As the majority opinion notes, approximately half of the suppression hearing transpired with Dallio representing himself. Maj. Op. at 561 n.2. Proceeding *pro se,* Dallio submitted to the court a supplemental motion to suppress, recalled Detective Copeland, testified on his own behalf in narrative form, and called Shawangunk Corrections Officer Scott Willis, which prompted a rebuttal witness from the prosecution. Dallio concluded with a rather lengthy argument for suppression, in which he discussed *Miranda* and coercive interrogation techniques.

Nor is the fact that Dallio ultimately performed competently in conducting his defense necessarily material to determine the validity of a Sixth Amendment waiver under *Faretta. See Faretta,* 422 U.S. at 836, 95 S.Ct. 2525 ("[The defendant's] technical legal knowledge . . . was not relevant to an assessment of his knowing exercise of the right to defend himself."); *see also Godinez v. Moran,* 509 U.S. 389, 399, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993) ("[T]he competence that is required of a defendant seeking to waive his right to counsel is the competence to *waive the right,* not the competence to represent himself."). Rather, what matters is whether the defendant made a constitutionally valid waiver, which entails knowing the "dangers and disadvantages of self-representation." *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525.

Although I disagree with the majority's view that the Appellate Division did not unreasonably apply clear federal law as set forth in *Faretta,* I also conclude that the error suffered by Dallio was harmless. I begin with the threshold query of whether Dallio's Sixth Amendment violation was a structural error and thus excluded from harmless error scrutiny because it affected the entire conduct of the trial. *See Arizona v. Fulminante,* 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Structural errors are *per se* prejudicial, and a conviction tainted by structural error must be vacated. *Neder v. United States,* 527 U.S. 1, 8–9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). In contrast, there are certain "constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring automatic reversal of the conviction." *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *see Fulminante,* 499 U.S. at 306, 111 S.Ct. 1246 (stating that the Court has made clear that "a constitutional error does not automatically require reversal of a conviction," and "has recognized that most constitutional errors can be harmless"). Situations where the Supreme Court has applied harmless error analysis to constitutional errors have "involved 'trial error'—error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante,* 499 U.S. at 307–08, 111 S.Ct. 1246; *see Brecht v. Abrahamson,* 507 U.S. 619, 629, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

Violations of the Sixth Amendment right to counsel are structural only in two circumstances. The first circumstance, the "[a]ctual or constructive denial of the assistance of counsel *altogether,*" *Penson v. Ohio,* 488 U.S. 75, 88, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) (emphasis added) (quotation marks and citation omitted), clearly

Dallio should confer more with his counsel because of the difficulties he was experiencing representing himself.

does not apply here because Dallio had the assistance of counsel from the time of his arrest and for the majority of the suppression hearing. The second situation occurs if counsel was "prevented from assisting the accused during a critical stage of the proceeding." *United States v. Cronic*, 466 U.S. 648, 659 n. 25, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *see also Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 1240–41, 152 L.Ed.2d 291 (2002) ("We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding."). As to whether Dallio's counsel was "prevented from assisting [Dallio] during a critical stage of the proceeding," *Cronic*, 466 U.S. at 659 n. 25, 104 S.Ct. 2039, I note that Dallio's attorney was not prevented from assisting him throughout the suppression hearing, as Dallio received the assistance of counsel for the majority of the suppression hearing and, even during Dallio's self-representation, his counsel remained in the courtroom available to provide assistance or advice if needed. I thus conclude that Dallio's Sixth Amendment violation is amenable to harmless error analysis.[4]

The Supreme Court has formulated two tests for determining whether a constitutional error can be regarded harmless. Under *Chapman*, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that

it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. 824. In *Brecht*, however, the Supreme Court enunciated a slightly different harmless error standard in the context of federal habeas review of a state court conviction: "habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" 507 U.S. at 637, 113 S.Ct. 1710. In *Lainfiesta v. Artuz*, 253 F.3d 151 (2d Cir.2001), *cert. denied*, 535 U.S. 1019, 122 S.Ct. 1611, 152 L.Ed.2d 625 (2002), a panel of this Court applied *Brecht*, thus indicating that the *Brecht* standard remains in force with the passage of AEDPA. *Id.* at 158. In *Fuller v. Gorczyk*, 273 F.3d 212 (2d Cir.2001), which was decided after *Lainfiesta*, however, another panel declined to address whether *Brecht* controls post-AEDPA, but noted that several of our sister circuits have questioned *Brecht*'s continued vitality. *Id.* at 220.

As in *Fuller*, this issue need not be resolved on this day because Dallio cannot prevail under either *Chapman* or *Brecht*. While in the abstract a defendant proceeding *pro se* at a suppression hearing faces various dangers and disadvantages, Dallio was not prejudiced by any of these potential dangers during his self-representation. Dallio was represented by counsel for much of the prosecution's case at the suppression hearing, during which Detective Copeland and Detective Pierce were exten-

---

4. Even if one were to conclude that Dallio's attorney was prevented from assisting him during the suppression hearing, it still is unclear that all denials of the right to counsel at critical stages are structural errors. On one hand, the Court explained in *Cronic* that "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of trial." *Cronic*, 466 U.S. at 659, 104 S.Ct. 2039. In *Coleman v. Alabama*,

399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), however, where the defendant was deprived of the right to counsel for the entirety of a preliminary hearing that the Court determined was a critical stage, the Court remanded with instructions that "[t]he test to be applied is whether the denial of counsel at the preliminary hearing was harmless under *Chapman v. California.*" *Id.* at 11, 90 S.Ct. 1999.

sively cross-examined. Even as Dallio presented his own defense, his attorney remained present as stand-by counsel for the duration of the hearing. Furthermore, notwithstanding some difficulties Dallio encountered while examining the witnesses, on the whole Dallio performed quite competently when he recalled Detective Copeland, questioned Officer Willis, and offered a closing argument. Any error, therefore, was "harmless beyond a reasonable doubt," *Chapman*, 386 U.S. at 24, 87 S.Ct. 824, and did not "result[ ] in 'actual prejudice,'" *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710.

Thus, I too would affirm.