**UNITED STATES of America, Appellee.**

v.

**Harry L. FORE, Defendant–Appellant.**

**Docket Nos. 98–1065, 98–1555.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 2, 1998.

Decided Feb. 24, 1999.

---

Steven M. Statsinger, Legal Aid Society Federal Defender Division Appeals Bureau, New York, NY, for Defendant–Appellant.

Daniel R. Alonso, Assistant United States Attorney, Eastern District of New York, Brooklyn, N.Y. (Zachary W. Carter, United States Attorney, David C. James, Jo Ann M. Navickas, Assistant United States Attorneys, of counsel), for Appellee.

Before: KEARSE and POOLER, Circuit Judges, and POLLACK,[*] District Judge.

POOLER, Circuit Judge:

Harry L. Fore appeals from the January 20, 1998, judgment of the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge* ) convicting him of 25 counts of fraud relating to his misuse of social security numbers and unlawful receipt of social security and workers compensation and disability benefit payments [1].

## BACKGROUND

A grand jury named Fore in a 25–count indictment on January 30, 1997, and charged him with fraudulent use of two social security numbers, mail fraud and making false statements, in violation of 42 U.S.C. § 408(a) and 18 U.S.C. §§ 1341, 1001.[2] Fore obtained two

---

[*] Honorable Milton Pollack, of the United States District Court for the Southern District of New York, sitting by designation.

1. By Notice of Motion dated November 25, 1998, Fore sought to consolidate this appeal with his subsequent appeal of Judge Seybert's denial of his request for a stay of sentence and release pending appeal. We granted the motion to consolidate and denied Fore's additional motion before this court for bail pending appeal. By virtue of the result we reach in Fore's substantive appeal of his conviction, we dismiss his subsequent bail appeal as moot.

2. Specifically, the indictment charged Fore with one count of social security fraud in violation of 42 U.S.C. § 408(a)(4); seven counts of social security fraud in violation of 42 U.S.C. § 408(a)(7)(A); one count of fraudulent use of a social security account number in violation of 42 U.S.C. § 408(a)(7)(B); 14 counts of mail fraud in violation of 18 U.S.C. §§ 1341, 2 and 3551; and

different social security numbers in 1971 and 1976, providing false information on his second social security number application. Using his first number, Fore unlawfully claimed and received social security disability benefits for himself and his dependents in the amount of $66,000 for the period of July 1989 through February 1996. The benefits were unlawful because Fore was not disabled and actually worked during that time. Fore used his second social security number in connection with his employment at Friendly's restaurant between April 1989 and April 1990 and Carey Transportation between March 1992 and February 1993. During the time he worked for Carey Transportation, Fore made three workers compensation claims using the second social security number, including a claim for which he received $19,000 from Aetna Casualty and Surety Company between March 1993 and November 1994. In connection with the third workers compensation claim, Fore's physician completed medical reports known as "C–4" forms and mailed them to the insurance company between September 1993 and November 1994. These mailings provided the basis for the 14 counts of mail fraud with which Fore was charged.[3]

In September 1993, Fore applied for a job as a custodian with the U.S. Postal Service, using his first social security number. He made false statements on his government employment application because he did not disclose the second social security number, his full work history, or his prior claims regarding disability and workers compensation. Fore worked for the postal service between October 1993 and May 1994.

Counsel represented Fore throughout the early stages of these criminal proceedings. On September 9, 1997, Fore informed Judge Seybert that he wanted to represent himself at trial because "no one [knew] what [he] was going through at this particular time better than [he did]." Although Judge Seybert warned him of the dangers of proceeding *pro se,* Fore did not change his mind. Specifical-

ly, the trial judge told Fore that if he proceeded without counsel, then she would not assist him even though he was unfamiliar with the law, that he faced "almost a certain guilty verdict," and that he could serve "possibly jail time up to ten years." Fore did accept stand-by counsel. A trial took place, and the jury convicted Fore on all 25 counts of the indictment. During the trial, Fore did not object to the jury instruction describing the "use of the mails" element of mail fraud.

Fore accepted the assistance of counsel during sentencing proceedings. Judge Seybert sentenced Fore on January 15, 1998, to concurrent terms of 27 months imprisonment, three years supervised release, and a $1,250 special assessment. The district court also ordered Fore to pay $89,680.53 in restitution. Fore, who continues to have counsel, now appeals his conviction and sentence.

## DISCUSSION

### I. Waiver of counsel

■ Appellant argues first that the district court violated his Sixth Amendment rights because his decision to proceed without counsel was not knowing and intelligent. Specifically, Fore claims that because the district court grossly understated the criminal penalties he faced, he made his decision without all of the necessary information. The government responds that the entire circumstances of the district court's discussion with Fore demonstrate a valid waiver of Sixth Amendment rights. We agree. Under the well established law of this circuit, district courts are not required to follow a formulaic dialogue with defendants wishing to waive their Sixth Amendment rights to counsel, and we decline to impose a rigid framework in which all aspects of possible sentences are discussed.

■ The Sixth Amendment gives criminal defendants both the right to counsel and the power to defend themselves without counsel "if that decision is made intelligently

two counts of making false statements to the postal service in violation of 18 U.S.C. §§ 1001 and 3551.

**3.** Fore also used the false social security numbers to open a bank account and apply for and obtain a New York State driver's license, and these acts form the basis for three counts of social security fraud in the indictment.

and knowingly, with full awareness of the right to counsel and the consequences of its waiver." *United States v. Tracy*, 12 F.3d 1186, 1191 (2d Cir.1993) (citing *Faretta v. California*, 422 U.S. 806, 835–36, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). Whether a defendant's waiver is knowing and intelligent depends upon the particular facts and circumstances of the case and characteristics of the defendant himself. *See id.* In general, the trial court should "carefully consider defendant's education, family, employment history, general conduct, and any other relevant circumstances." *United States v. Schmidt*, 105 F.3d 82, 88 (2d Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 130, 139 L.Ed.2d 80 (1997). While the defendant must be competent to waive his Sixth Amendment right to counsel, he need not be able or qualified to conduct his own defense. *See id.*

█ The district judge and defendant should engage in a colloquy on the record, but there is no scripted procedure for this discussion. *See Torres v. United States*, 140 F.3d 392, 401 (2d Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 595, 142 L.Ed.2d 537 (1998). The court should conduct a "full and calm discussion" with defendant during which he is made aware of the dangers and disadvantages of proceeding *pro se*. *Tracy*, 12 F.3d at 1192 (quotation omitted). The content of that discussion normally includes a discussion of "the nature of the charges, the range of allowable punishments, and the risks of self-representation." *Torres*, 140 F.3d at 403. For example, the trial court may discuss a potential conflict between self-representation and the diminished capacity defense or the implications of self-representation upon defendant's Fifth Amendment right to remain silent. *See Schmidt*, 105 F.3d at 88–89. The extent of the discussion will depend upon the circumstances of the case.

Fore contends that his *Faretta* inquiry with Judge Seybert was inadequate because she told him that he faced potential imprisonment of only ten years and did not mention other aspects of his potential punishment, such as supervised release, fines and restitution. According to Fore, he faced a potential sentence of up to 125 years imprisonment if the court sentenced him consecutively to the statutory maximum of five years on each of the 25 counts of the indictment. Furthermore, appellant argues that the court did not warn him of potential imprisonment in the event that the court imposed and revoked supervised release. Finally, Fore claims that his waiver was not knowing because the trial court did not disclose his potential financial liability for fines, special assessments and restitution. We find Fore's arguments unpersuasive.

█ Even if the potential sentence of 125 years imprisonment is accurate because of the trial court's ability to make upward departures, there is no question that such a long sentence was a remote possibility at best given the relevant Sentencing Guidelines provisions regarding grouping of similar convictions and concurrent sentences. *See* U.S.S.G. §§ 3D1.2(d) (grouping); 5G1.2(c) (concurrent sentences). Moreover, the actual sentence of imprisonment that Fore received, 27 months, was significantly less than 10 years. Although Fore could not have known this fact at the time he made his waiver, it indicates the reasonableness of the court's warning that defendant could go to jail for "up to ten years." Our case law does not require an explicit accounting of the potential punishment in a *Faretta* discussion, and we decline to create the requirement. In our view, Fore received a realistic picture from Judge Seybert regarding the magnitude of his decision. Requiring the judge to inform defendant about a hypothetical 125–year prison sentence would be counterproductive to her goal of conducting a full and calm discussion with Fore. Moreover, detailed discussion of every allowable component of a potential punishment could detract from the trial court's duty to inform defendant of the effect that self-representation could have upon his imminent trial, his rights and defenses.

We have no doubt that Fore was "clearly aware" of the significant penalties he would face if convicted. *United States v. Hurtado*, 47 F.3d 577, 583 (2d Cir.1995). We also are assured on this record that Fore's waiver decision was knowing and intelligent. In addition to advising Fore of a potential pris-

on term, the court told Fore that his assigned counsel was qualified and willing to go to trial, that having counsel was very important, and that a choice to proceed *pro se* was devastating and entailed near-certain conviction. Judge Seybert inquired into Fore's educational background and lack of legal training, and she pointed out to him that the criminal proceeding was vastly different from a prior civil matter in which he was involved. Finally, the district judge required Fore to reconsider his decision with assigned counsel before she accepted his waiver. This discussion demonstrates that Fore considered and understood the ramifications of his choice. *See Torres,* 140 F.3d at 401. Consequently, Fore suffered no constitutional deprivation as a result of his decision to represent himself.

## II. Sufficiency of the evidence

Appellant raises two substantive challenges to his convictions. First, Fore argues that the district court's jury instruction regarding an element of mail fraud was plainly erroneous. Second, appellant contends that we must reverse his conviction because the government did not adequately prove that Fore knew or reasonably could have foreseen that his physician would use the mail to send reports relating to his fraudulent workers compensation claim to Aetna. Neither contention has merit.

Appellant concedes that the plain error standard of review applies because he did not object during trial to the trial court's instruction regarding knowing use of the mails. *See Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997). The district court utilized a pattern jury instruction to define knowing use of the mails, and the instruction accurately reflects the current law in this circuit. No plain error is present in these circumstances.

■ With respect to appellant's claim of insufficient evidence for conviction, we review the evidence in the light most favorable to the government and draw all possible inferences in favor of conviction. *See United States v. Scarpa,* 913 F.2d 993, 1004 (2d Cir.1990). We must determine whether the jury after drawing reasonable inferences from the evidence could have fairly and logi-

cally decided that defendant was guilty beyond a reasonable doubt. *See id.*

■ In order to obtain a conviction for mail fraud, the government had to prove that Fore "caused the mailing and that it was in furtherance of a fraudulent scheme." *United States v. Tocco,* 135 F.3d 116, 124 (2d Cir.), *cert. denied,* ―― U.S. ――, 118 S.Ct. 1581, 140 L.Ed.2d 795 (1998). The government could prove this element by showing that Fore acted with knowledge that use of the mail would "follow in the ordinary course of business" or that Fore could reasonably have foreseen use of the mail, even if he did not actually intend that a mailing take place. *Id.* (quotations and citation omitted). We find that the jury fairly and logically could decide beyond a reasonable doubt that Fore knew or could reasonably have foreseen that his fraudulent claim for workers compensation would involve use of the mail. Documentary evidence at trial demonstrated that Fore completed forms and applications indicating that insurers required written verification of his disability claims. The Aetna employee familiar with Fore's claim testified that the insurance company ordinarily received claims and medical reports through the mail, thus establishing an ordinary business practice. Moreover, the jury reasonably could infer that because the doctor and insurance company were located in different places, Fore knew or could reasonably have foreseen that the doctor would use the mail in the ordinary course of business to send the required information to Aetna. The government thus presented sufficient evidence of Fore's knowledge of the use of the mails in connection with his fraud.

## III. Restitution

Appellant finally challenges portions of the district court's order directing him to pay $89,680.53 in restitution. Although the government originally conceded that the order was erroneous in two respects, it has changed its position in response to our request for additional briefing regarding the proper way to characterize the district court's action. For the reasons that follow, we vacate the portion of the restitution order

directing payment to Cigna and otherwise affirm it.

 First, the district court ordered $66,086.40 in restitution payments to the Social Security Administration ("SSA") for Fore's violations of 42 U.S.C. § 408. Pursuant to 18 U.S.C. § 3663(a)(1), the court may order restitution when sentencing a defendant convicted of various offenses under titles 18, 21 and 49 of the United States Code. However, Section 3663(a)(1) does not include in this list violations of title 42 of the United States Code. Because the court's authority to order restitution depends upon the statute, this omission in Section 3363(a)(1) deprives the district court of the power to order restitution for Fore's social security fraud convictions. However, if restitution is ordered as a special condition of supervised release, then the order is permissible even if the conviction does not rest upon a conviction specified in Section 3363(a)(1). *See United States v. Bok,* 156 F.3d 157, 166–67 (2d Cir.1998). *See also* 18 U.S.C. §§ 3583(d), 3563(b) and U.S.S.G. § 5E1.1(a). Because the record below supports either view of Judge Seybert's restitution order, the parties agree that Judge Seybert imposed restitution at least in part as a special condition of supervised release. We therefore affirm the order only insofar as Judge Seybert imposed restitution payments to SSA as a condition of Fore's supervised release. The restitution order is vacated to the extent that it reflected a statutory restitution order.

 Second, the restitution order of $4,420 to Cigna was erroneous because it entails a double recovery. According to the government, Cigna made an initial workers compensation payment on Fore's fraudulent claim, but Aetna reimbursed Cigna for the entire payment. The restitution order to Aetna already includes the $4,420 that Cigna initially paid Fore. This matter therefore is remanded to the district court for entry of a corrected judgment. *See* 28 U.S.C. § 2106.

## CONCLUSION

We reverse the judgment of the district court only as it relates to the order of restitution and remand the matter for entry of a

corrected judgment requiring (1) $19,174.13 in statutory restitution to Aetna; and (2) restitution payments to the SSA on the balance of $66,086.40 as a special condition of supervised release. We have considered all of appellant's remaining arguments and find them unpersuasive. The judgment of the district court therefore is affirmed in all other respects.