**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-6272

DONALD HERRINGTON,

Plaintiff – Appellant,

v.

CHADWICK DOTSON, Director of the Department of Corrections,

Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Anthony John Trenga, Senior District Judge. (1:16-cv-00412-AJT-MSN)

Argued: January 24, 2024                                 Decided: April 30, 2024

Before NIEMEYER, AGEE and THACKER, Circuit Judges.

Affirmed in part, reversed in part, and remanded with instructions by published opinion. Judge Agee wrote the opinion in which Judge Niemeyer and Judge Thacker joined.

**ARGUED:** Madeline Killen, Nikolai Morse, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant.  Craig Stallard, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** J. Scott Ballenger, Catherine E. Stetson, Appellate Litigation Clinic, UNIVERSITY OF VIRGINIA SCHOOL OF LAW, Charlottesville, Virginia, for Appellant.  Jason S. Miyares, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

AGEE, Circuit Judge:

Donald Herrington brought a 28 U.S.C. § 2254 habeas petition challenging his state criminal convictions. He argued (1) that the state trial court violated his Sixth Amendment right to counsel and (2) that his appellate counsel was ineffective for failing to bring two meritorious arguments on direct appeal, a Sixth Amendment claim and an erroneous jury instruction claim. The district court rejected both arguments and denied Herrington's petition. He appeals.

Because we conclude that Herrington clearly, unequivocally, and knowingly waived his right to counsel, we affirm that aspect of the district court's decision. We also affirm the district court's decision as to the ineffective assistance of counsel argument regarding Herrington's Sixth Amendment claim. However, because Respondent[1] concedes that Herrington meets the standard for ineffective assistance of counsel for his jury instruction argument, we reverse that part of the district court's decision and remand with instructions to issue a writ of habeas corpus unless, within a reasonable period of time the district court shall deem appropriate, Herrington is afforded a new state court appeal in which he may raise this claim that was erroneously omitted from his original appeal.

---

[1] The named respondent is Chadwick Dotson, the Director of the Virginia Department of Corrections. For ease of reference, we refer to Dotson as "Respondent."

2

I.

A.

Prior to the criminal proceedings underlying this appeal, Herrington was involved in a different criminal proceeding that is, in part, relevant to this case. In 2008, the Commonwealth of Virginia charged Herrington with several minor drug crimes and he desired assistance with his defense. Believing he was unable to afford a private attorney, Herrington filled out indigency forms, demonstrated his entitlement to court-appointed counsel, and was appointed an attorney. Herrington was eventually acquitted of all charges.

Thereafter, in 2011, the Commonwealth charged Herrington with five counts of perjury, three counts of obtaining money by false pretenses, three counts of filing false or fraudulent income tax returns, two counts of failure to file an income tax return, and two counts of drug possession. The perjury counts all related to Herrington's failure to disclose certain rental income in the indigency forms that he filled out in order to receive appointed counsel for his 2008 charges.

At a hearing on the new charges before a Virginia trial court on December 20, 2011, Herrington appeared without counsel. The trial court immediately inquired about Herrington's desire to be represented by counsel:

| The court: | So, Mr. Herrington, what we need to do is talk about what you intend to do about an attorney. And your choices are to hire your own attorney. If you're eligible, you can be considered for Court appointed counsel, or you can proceed without an attorney. What would you like to do? |
| Herrington: | Well, I think we're just going to proceed without an attorney, and then if I can get the funds together to get |

3

> an attorney, I will do so, but I don't want to hold up the Court, and all those perjuries are from getting a Public Defender, and I'm too scared to fill out that form for this fact that she's going to give me a perjury charge.

J.A. 225–26.

The court then listed the offenses with which Herrington was charged and the potential prison sentences they carried, omitting only that the charges also carried mandatory periods of supervised release. In light of that information, the court probed further, "[a]nd you're telling me that you want to proceed without an attorney?" J.A. 227. Herrington responded, "Well, I don't want to hold up the Court." J.A. 227. The court reassured Herrington that it was more concerned with Herrington receiving counseled representation if he wanted it. After Herrington confirmed that he could "get the funds together to hire an attorney" with a little extra time, J.A. 227, the court agreed to give Herrington six weeks to hire an attorney.

Herrington reappeared six weeks later on February 3, 2012, again without an attorney. During the hearing, the following exchange occurred:

| The court: | Do you intend to hire an attorney? |
| Herrington: | I do. |
| The court: | When are you planning on doing that? |
| Herrington: | When I have the funds to do so. |
| The court: | Well, you're out of time, Mr. Herrington. |
| Herrington: | Okay, that's fine. |
| The court: | Your case was indicted on December 5th, you had a previous arraignment date of December 20th, and the Court continued your case until today giving you six weeks to hire an attorney. Have you made any efforts toward hiring an attorney? |

4

| Herrington: | I have, your Honor. |
| . . . . | |
| The court: | All right. And you have not retained any attorneys to date? |
| Herrington: | I have not. |
| The court: | Have you previously filled out a request for Court-appointed counsel, Mr. Herrington? |
| Herrington: | I will not be doing that, Your Honor. I would rather represent myself. |

J.A. 232–33.

The court again listed Herrington's charges, emphasizing their seriousness and the potential for imprisonment. It asked Herrington, "do you understand that if you want to represent yourself on these charges that the same rules would apply to you as would apply to an attorney?" J.A. 234. Herrington responded, "[y]es." J.A. 234. The court then asked Herrington about his educational background. Herrington confirmed that he had only a high school education and had no legal background. Concerned, the court continued:

| The court: | All right. Do you think that you are qualified to represent yourself in these cases? |
| Herrington: | Probably not to the fullest extent, but I'm gonna give it my best shot. |
| The court: | Do you understand that the Court will give you an opportunity and has given you the opportunity to hire counsel? |
| Herrington: | Yes. |
| The court: | But you're indicating that you don't want to do that? |
| Herrington: | Well, I just -- like I was trying to say, I just haven't had the money to do it. And I am filing my tax returns and I do expect to get about five-thousand-dollars back real soon. Also, the Commonwealth, when they raided my home, do have some titles and things that they're holding in their possession, which I'm hoping that, you |

5

know, since the warrant was invalid that those items are going to be returned very shortly to me.

J.A. 234–36.

Eventually, the court decided to give Herrington additional time—until March 26, 2012 (nearly two months)—to hire an attorney, despite Herrington's assurances that he was "prepared to go forward and represent [him]self." J.A. 237.

Prior to the expiration of this additional time, Herrington filed multiple pro se motions and indicated to the court that he intended to proceed without an attorney. As a result, on February 21, 2012, the court conducted another hearing and the following exchange occurred:

| | |
|---|---|
| The court: | [Y]ou intend to proceed without an attorney; is that correct? |
| Herrington: | Yeah. I'm willing to waive my right to an attorney. After talking to attorneys, I think there's a high probability that I will be representing myself on this case as it's just really document heavy. |
| The court: | Okay. Well, Mr. Herrington, the time to make that decision is now. |
| Herrington: | Okay. |

J.A. 245.

The trial court thereafter explained that it would not give Herrington another two months to hire an attorney if he had no intention of doing so. The court again recited Herrington's charges and asked him to confirm that he understood that he faced, inter alia, thirteen felony charges that carried the potential for time in the penitentiary. Herrington stated that he understood "[f]ully" and that he was aware of the sentencing range for each of the charges. J.A. 247. The interaction continued:

6

| | |
|---|---|
| The court: | Do you intend to hire an attorney? |
| Herrington: | I have talked to attorneys, and like I said, it's -- the attorneys that I've talked to just -- no one really wants to take this case. It's too document heavy, and I haven't found counsel that's really willing to take this case. It's turning into a problem for me. I am prepared to represent myself and all the consequences that go with it. |
| The court: | Well, the issue really, Mr. Herrington, isn't whether you're prepared. It's whether that's what you are asking the Court to do, to allow you to waive your right to counsel because you want to represent yourself on these felony charges. Is that what you want to do? |
| Herrington: | Yes, it is. |

J.A. 248–49. The court asked whether Herrington wouldn't rather adhere to the original hearing date of March 26 so that he could find an attorney. Herrington responded that he did not want more time, "[he] would like to represent [him]self," and he was "waiving" his right to counsel. J.A. 249. Confirming, the court asked:

| | |
|---|---|
| The court: | So you're asking this Court to allow you to waive your right to counsel on thirteen felonies and two misdemeanors; is that correct? |
| Herrington: | That's correct. |

J.A. 249–50.

Herrington then reviewed a form that indicated that he intended to waive his right to an attorney. He confirmed that he understood the form and that he was agreeing to undertake "all of the responsibilities and the role that an attorney would have," including examining witnesses and making procedural decisions. J.A. 251. The hearing went on:

| | |
|---|---|
| The court: | Do you feel qualified to represent yourself in a court of law on these serious felony charges? |
| Herrington: | No. |

7

| The court: | Well, then why would you give up your right to an attorney and proceed without an attorney? |
|---|---|
| Herrington: | I just -- it seems like there's -- it's becoming a conflict with, you know, my right to a speedy trial and finding representation, having the money to [hire] an attorney, having my house raided, everything of value taken from me so I can't really sell anything to get an attorney because the Commonwealth has it. I can't really get a job because I can't leave the State of Virginia which I belong to a union that's in Maryland. So I've really been restricted in my abilities to get money, raise money, and hire an attorney. |

. . . .

| The court: | Well, those aren't necessarily related, Mr. Herrington. Let's talk about this because you have an absolute right to be represented by counsel. You also have an absolute right to represent yourself in these proceedings. But if you cannot afford an attorney and you meet the standards of indigency as set by the Supreme Court, an attorney will be appointed to represent you. Now, you haven't asked to be considered for Court-appointed counsel, is that right? |
|---|---|
| Herrington: | I'm not going to meet the standard, Your Honor, with the -- |
| The court: | Did you not just tell me that you're not working? |
| Herrington: | I'm getting unemployment. |

. . . .

[A]nd then I have some rental income that I do receive. . . . [S]o that's what all these perjuries are for is that I did not consider that [rental income] in my last time for obtaining an attorney. All the perjuries are basically for obtaining an attorney.

| The court: | So these charges are arising out of prior applications that you made? |
|---|---|
| Herrington: | For attorneys, yes, they are. |
| The court: | And that is why you are declining to fill out an application [for Court-appointed counsel here?] |
| Herrington: | Absolutely. |

8

. . . .

| | |
|---|---|
| The court: | All right. I understand that. So that leaves us with two options and that is either for you to hire an attorney or for you to go forward and represent yourself. |

J.A. 252–55.

Herrington explained that he wanted the court to consider his motions, particularly a motion that explained that the Commonwealth's search of his home was unconstitutional because it did not have a warrant. Herrington hoped that success on that motion would result in a return of his property which would help him hire an attorney. But the court stated that if he proceeded with his motions, the court would not hear those same motions again if later represented by counsel. Herrington stated that he understood and asked the court to proceed on his motions without counsel. The court again explained that if Herrington "want[ed] to wait to be represented by counsel, [he could] do that." J.A. 258. Herrington again declined the opportunity, confirming his understanding of the consequences of such a waiver. The court finally accepted Herrington's waiver and considered his pro se motions.

Sometime before his trial on the 2011 charges, Herrington was charged in a separate case for a different crime. In that case, Herrington was represented by court-appointed counsel. When the trial court in this case found out about the representation in the separate case, the following interaction occurred:

| | |
|---|---|
| The court: | You still want to go forward without an attorney? |
| Herrington: | Uh-huh. I do. |
| The court: | Now, clearly, you qualified for court-appointed counsel on the new charge. |
| Herrington: | I did not. |
| The court: | Well, the Judge appointed you an attorney. |

9

| | |
|---|---|
| Herrington: | As a means to an end. |
| The court: | So there must be some reason for that. So I would have to think that there is at least a chance that you would qualify, or that this Court would appoint counsel if you want it on these charges, but you do not want that? |
| Herrington: | No. |
| The court: | No? |
| Herrington: | No, thank you. I'm prepared to represent myself. |

J.A. 318–19.

Thereafter, throughout the remainder of the proceedings, the court repeatedly verified that Herrington still wanted to waive his right to counsel. *See* J.A. 321–22 (confirming waiver before considering certain motions); J.A. 325 (asking Herrington if he "intend[ed] to continue with [his] waiver" one week before trial); J.A. 329 (reminding Herrington that he had a right to an attorney and confirming that he wanted to represent himself on the first day of his trial). Herrington confirmed his desire to represent himself each time.

Herrington thus proceeded to trial pro se. After both sides finished presenting evidence, Herrington realized that Virginia treats the attempt of a crime as a lesser included offense of every substantive charge and that he could therefore be convicted of an attempt to obtain money by false pretenses even though he was charged only with the completed crime of obtaining money by false pretenses. Because he did not know that prior to the close of evidence, he had not prepared a defense to attempt, arguing only that he never received any money. And, at that point, it was too late to make such a defense.

10

Ultimately, the jury acquitted Herrington of the two drug possession charges and one perjury charge; convicted him of three counts of the lesser included offense of attempting to obtain money by false pretenses (acquitting him of the related completed offense); and convicted him of the remaining charges. The Virginia trial court then sentenced Herrington to twelve years' imprisonment.

B.

Herrington then received court-appointed counsel to appeal his state convictions on the 2011 charges. After limited interactions with Herrington, appellate counsel filed a brief raising one issue—that the trial court abused its discretion when sentencing Herrington—and simultaneously filed an *Anders*[2] brief asking to withdraw as Herrington's counsel. Herrington filed a pro se supplemental brief, identifying 134 alleged errors in the record.

The Court of Appeals of Virginia affirmed the trial court's judgment. *See* J.A. 117–20. It first rejected Herrington's sentencing argument and then determined that the issues identified in Herrington's pro se supplement were waived because he failed to support them with legal argument or citations. The Supreme Court of Virginia subsequently refused Herrington's pro se petition to appeal.

Thereafter, Herrington filed a pro se petition for a writ of habeas corpus in the Supreme Court of Virginia. He argued, inter alia, that the trial court violated his Sixth

---

[2] *Anders v. California*, 386 U.S. 738 (1967). Counsel is permitted to submit an *Anders* brief when, after fully performing his duty to represent his client, counsel determines that the appeal is "so frivolous that counsel should be permitted to withdraw." *Penson v. Ohio*, 488 U.S. 75, 82 (1988) (citation omitted).

Amendment right to counsel and that his appellate counsel was ineffective for failing to bring multiple meritorious issues on appeal.

The Supreme Court of Virginia dismissed the petition. *See* J.A. 166–73. Relevant here, the court concluded that Herrington's Sixth Amendment claim was barred under *Slayton v. Parrigan*, 205 S.E.2d 680 (Va. 1974),[3] because it was non-jurisdictional and, as such, was inappropriately being brought for the first time in a habeas petition. The court also rejected Herrington's ineffective assistance of counsel claim, summarily stating that Herrington satisfied neither the performance nor the prejudice prongs of the *Strickland*[4] test. It reasoned that the record "demonstrates that counsel properly filed a petition for appeal pursuant to *Anders*," J.A. 171, and "[t]he selection of issues to address on appeal is left to the discretion of appellate counsel," J.A. 173.

C.

Herrington then filed this pro se § 2254 habeas petition in federal court, raising fifteen assignments of error. The district court dismissed Herrington's petition, reasoning in relevant part that Herrington's Sixth Amendment claim was procedurally defaulted because the Supreme Court of Virginia refused to consider its merits under *Slayton* and that the Supreme Court of Virginia correctly concluded that Herrington failed to meet the

---

[3] *Slayton* held that a state habeas petitioner cannot raise a non-jurisdictional claim for the first time in a habeas petition if it could have been presented at trial or on direct appeal. 205 S.E.2d at 682.

[4] *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* test requires the plaintiff to show that (1) his attorney's "performance was deficient" and (2) "the deficient performance prejudiced the defense." *Id.* at 687.

12

*Strickland* standard for his ineffective assistance of counsel claims. *Herrington v. Clarke*, 1:16-cv-412 (AJT/MSN), 2017 WL 1362032, at *4, *10–11 (E.D. Va. Feb. 10, 2017). The district court did not, however, consider the merits of any of the arguments Herrington alleged his appellate counsel should have raised.

Herrington appealed to this Court. We vacated in part the district court's decision and remanded the case back to the district court. *Herrington v. Clarke*, 699 F. App'x 158, 161 (4th Cir. 2017) (per curiam). We first concluded that the Supreme Court of Virginia may have erroneously held that Herrington's Sixth Amendment claim was procedurally defaulted based on *Slayton*, reasoning that the Sixth Amendment "stands as a *jurisdictional* bar to a valid conviction." *Id.* at 160 (emphasis added) (citation omitted). We therefore remanded the issue for the district court to consider the merits in the first instance.

We also determined that the Supreme Court of Virginia and the district court erroneously failed to address the merits of the claims Herrington argued that his appellate counsel should have raised. *Id.* at 161. Accordingly, we vacated the district court's decision as to the ineffective assistance claim and remanded for a determination on its merits.

On remand, the district court again dismissed Herrington's petition. *Herrington v. Clarke*, 1:16-cv-412 (AJT/MSN), 2020 WL 5809994, at *1 (E.D. Va. Sept. 29, 2020). Regarding the Sixth Amendment claim, the district court explained that "[a] review of the trial court transcripts makes clear that [Herrington's] waiver was knowing, intelligent, and voluntary." *Id.* at *3. As to the ineffective assistance of counsel claim, the district court concluded that none of the issues Herrington identified would have been successful in his

13

state appeal, so he did not suffer any prejudice from his counsel's failure to raise them. Both decisions will be discussed in more detail below.

Herrington timely appealed, arguing again that the Virginia trial court violated his Sixth Amendment right to counsel and that his appellate counsel was ineffective for failing to make multiple meritorious arguments in his direct appeal. We issued a certificate of appealability on both issues and appointed Herrington counsel to assist him with his appeal. We have jurisdiction to consider these arguments pursuant to 28 U.S.C. § 1291.

II.

We review a district court's habeas decision de novo, applying the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Tyler v. Hooks*, 945 F.3d 159, 165 (4th Cir. 2019).

Under AEDPA, federal courts can award habeas relief only if the adjudication of an issue raised in state court and decided on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). However, where the state court did not reach the merits of the petitioner's claims and "instead ruled on procedural grounds," we review the state court's decision de novo. *Bostick v. Stevenson*, 589 F.3d 160, 163 (4th Cir. 2009).

14

III.

We begin with Herrington's Sixth Amendment claim. "The Sixth Amendment guarantees to a criminal defendant the right to the assistance of counsel before he can be convicted and punished by a term of imprisonment." *United States v. Ductan*, 800 F.3d 642, 648 (4th Cir. 2015) (citing U.S. Const. amend. VI). Although this right is "fundamental to our system of justice" and "critical to the ability of the adversarial system to produce just results," it is "equally clear that the Sixth Amendment also protects a defendant's affirmative right to self-representation." *Id.* (citation omitted). These two rights are "inescapably in tension" because the invocation of the right to self-representation requires the defendant to waive his right to counsel. *Id.* at 649. Nonetheless, because of the importance of the right to counsel, "representation by counsel is the default position," and lower courts must "indulge in every reasonable presumption against the relinquishment of the right to counsel." *Id.* (cleaned up).

"Accordingly, an effective assertion of the right to self-representation (and thus waiver of the right to counsel) requires:" (1) "that a defendant knowingly and intelligently forgo the benefits of counsel after being made aware of the dangers and disadvantages of self-representation," and (2) that the waiver be "clear and unequivocal." *Id.* at 649–50 (cleaned up).

Herrington argues that the Virginia trial court violated his Sixth Amendment rights for three reasons: (1) he was erroneously forced to choose between his Fifth and Sixth Amendment rights; (2) his waiver was not made knowingly and intelligently; and (3) his waiver was not clear and unequivocal. We address each argument in turn.

15

A.

Herrington first contends that the Virginia trial court improperly required him to choose between his Fifth and Sixth Amendment rights. To support his position, Herrington relies on a line of cases in which other circuit courts of appeal concluded that defendants cannot be forced to either supply incriminating information in an indigency form or forgo appointed counsel altogether. *See, e.g.*, *United States v. Gravatt*, 868 F.2d 585, 589 (3d Cir. 1989); *United States v. Moore*, 671 F.2d 139, 140 (5th Cir. 1982); *United States v. Anderson*, 567 F.2d 839, 840–41 (8th Cir. 1977); *see also United States v. Branker*, 418 F.2d 378, 380 (2d Cir. 1969) ("The defendant should enjoy his constitutional rights to counsel . . . without running the risk that thereby he may be incriminating himself with respect to the charges pending against him.").

Each of those cases involved a defendant charged with tax evasion who desired court-appointed counsel but explicitly objected to filling out indigency forms on Fifth Amendment self-incrimination grounds. Each defendant contended that if he filled out the indigency forms necessary to receive appointed counsel, he would have provided the prosecutor with incriminating evidence of his underlying tax evasion charges in violation of his Fifth Amendment rights. Consequently, the defendant had to choose whether to give up his right to an attorney under the Sixth Amendment or his right against self-incrimination under the Fifth Amendment. Our sister circuits decided that requiring such a choice was improper. *See, e.g.*, *Branker*, 418 F.2d at 380 ("The defendant should enjoy his constitutional rights to counsel and to appeal and the means of supporting his assertion of these rights by his own testimony without running the risk that thereby he may be

16

incriminating himself with respect to the charges pending against him."). To avoid requiring such a choice, the circuit courts mandated an alternative in these situations, such as allowing the defendant to fill out the indigency form in camera and sealing the defendant's answers or prohibiting the prosecutor from using the information provided in the form.[5]

Herrington contends that those cases are directly applicable here. He argues that, like those defendants, the reason he did not obtain a court-appointed attorney is because he feared that filling out the indigency form necessary to receive counsel "would necessarily provide evidence that he was guilty of the various perjury and tax evasion charges he was facing" in violation of his Fifth Amendment rights. Opening Br. 24. Thus, under the above-discussed principles, Herrington asserts that the trial court was required to allow him to fill out the forms without the Commonwealth being able to use the information provided therein.

The district court rejected Herrington's position, explaining that the record shows that Herrington was not forced to choose between his Fifth and Sixth Amendment rights because Herrington—who only ever expressed a fear of receiving new perjury charges—

---

[5] Citing this line of cases, we previously noted that a trial court properly avoided this constitutional-choice issue by offering a tax-evasion defendant the option to fill out his indigency forms in camera and then sealing his answers so that they could not be used against him in his underlying trial. *See United States v. Davis*, 958 F.2d 47, 49 n.4 (4th Cir. 1992) ("Because Fifth and Sixth Amendment concerns are intertwined when court appointed counsel is sought by a defendant charged with an income tax violation . . . , we feel compelled to note that the district court avoided any serious Fifth Amendment challenge by conducting an *ex parte* examination . . . and informing [the defendant] that . . . his answers would be sealed.").

"could easily have averted the possibility of later perjury charges simply by being honest and thorough in his responses to the questionnaire." *Herrington*, 2020 WL 5809994, at *9. The district court also reasoned that, "[b]y hiring his own attorney—as the record suggests [Herrington] intended and could afford to do—[Herrington's] rights under both the Fifth and Sixth Amendments would have been protected." *Id.* at *10. Moreover, the district court explained that Herrington "flatly rejected [the trial court's] eventual suggestion that [it] would consider appointing him counsel irrespective of his financial circumstances or decision not to answer the indigency questionnaire." *Id.* We agree.

Unlike the defendants in the above-discussed cases on which Herrington relies, nothing in the record suggests that Herrington chose not to apply for court-appointed counsel due to a fear of providing the Commonwealth with incriminating evidence regarding his *then-pending* charges. He instead expressed only a fear of his financial information being used against him to support *future* perjury charges.

In his first hearing before the Virginia trial court, Herrington stated that his current perjury charges stemmed from "getting a Public Defender, and [he was] too scared to fill out [the indigency] form for the fact that [the prosecutor's] *going to give* me a perjury charge." J.A. 226 (emphasis added). In the next relevant interaction, Herrington explained:

| Herrington: | [S]o that's what all these perjuries are for is that I did not consider [my rental income] in my last time for obtaining an attorney. All the perjuries are basically for obtaining an attorney. |
| The court: | So these charges are arising out of prior applications that you made? |
| Herrington: | For attorneys, yes, they are. |

18

| The court: | And that is why you are declining to fill out an application -- |
| Herrington: | Absolutely. |

J.A. 254. Both interactions indicate that Herrington feared receiving a *future* perjury charge; not that he had any fears regarding his then-pending charges. And there is no contention in the record that anything Herrington might have reported in a new indigency form would relate back to his existing underlying charges.

The cases on which Herrington relies do not support providing him an alternative to the standard indigency procedures in this situation. They provide only that a defendant should not have to choose between providing incriminating evidence for his *underlying* case and receiving court-appointed counsel. *See, e.g.*, *Anderson*, 567 F.2d at 840 (explaining that the defendant did not want to provide information that "related to the underlying cause of action" because to do so would violate "his Fifth Amendment right against self-incrimination"); *Gravatt*, 868 F.2d at 587–88 (noting that the defendant affirmatively objected to filling out the financial form because disclosure of that information would provide evidence for his underlying trial). It is unreasonable to proffer that the trial court should be required to exempt Herrington from the consequences of providing false information—such as receiving new perjury charges unrelated to his underlying charges—so that he can obtain court-appointed counsel.

Indeed, in at least one of the cases on which Herrington relies, the court explicitly foreclosed Herrington's position. In explaining that a defendant should be allowed to fill out his indigency form with the promise of immunity from its use in his underlying trial, the Third Circuit explicitly noted that the defendant could still be charged with perjury in

19

the future if he provided false information in the form. *See Gravatt*, 868 F.2d at 591 ("Whichever method is chosen[—sealing the defendant's answers or providing him immunity—]the defendant may be required to provide the necessary financial information under the penalty of perjury."); *see also Anderson*, 567 F.2d at 840 (stating that the trial court "should have given [the defendant] an opportunity to disclose the required financial information to the trial court for it to review in camera" and, after that review "the financial data should be sealed and not made available *for the purpose of tax prosecution*" (emphasis added)). This makes clear that providing the defendant with an alternative is meant only to ensure that he is not required to provide the prosecution with evidence for its case in the underlying trial. Thus, the cases on which Herrington relies simply do not support his position.[6]

Moreover, even assuming that Herrington feared providing the Commonwealth with information about his pending charges, the trial court gave Herrington a way to protect both his Fifth and Sixth Amendment rights. The court offered to appoint Herrington counsel regardless of his financial situation. After discovering that he was appointed counsel in a separate proceeding, the court stated, "I would have to think that there is at least a chance that you would qualify [for court-appointed counsel], *or that this Court*

---

[6] That these cases are inapplicable is especially clear given that Herrington made it plain that the real reason he rejected court-appointed counsel was that he did not think he would qualify for it. *See* J.A. 253 (Herrington stating that he was "not going to meet the standard" for court-appointed counsel); J.A. 318 (Herrington denying that he qualified for court-appointed counsel in his separate case, stating instead that he was appointed counsel "[a]s a means to an end").

20

*would appoint counsel if you want it on these charges*, but you do not want that?" J.A. 319. (emphasis added). Herrington responded, "[n]o." J.A. 319.

The court's use of the word "or" indicates that the court would have appointed Herrington counsel regardless of whether he was entitled to appointed counsel—either Herington would qualify for counsel *or*, even if he didn't, the court would nonetheless appoint him counsel. *See* Va. Code § 19.2-159.B (stating that where the accused does not meet the income standards for court-appointed counsel, does not employ counsel, and refuses to waive his right to counsel, the court may nonetheless appoint counsel when "the ends of justice so require"). This second option indicates that Herrington could have received court-appointed counsel without filling out the indigency form (as is what apparently occurred in his separate proceeding). But Herrington refused the court's offer. Herrington cannot now genuinely complain that he was forced to choose between his Fifth and Sixth Amendment rights.

B.

Herrington also asserts that his waiver was not made knowingly because he was not informed that (1) his charges carried the potential for supervised release and (2) he could be convicted of attempt for any of the underlying charges without an amendment to the indictment. Not so.

As noted, a defendant's waiver of his Sixth Amendment right to counsel must be made knowingly and intelligently. This means that the defendant must make his choice "with eyes open." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004) (citation omitted). "The Supreme Court has not prescribed any formula or script to be read to a defendant who states that he

21

elects to proceed without counsel." *United States v. Roof*, 10 F.4th 314, 359 (4th Cir. 2021) (cleaned up). The trial court must simply "assure itself that the defendant knows the charges against him, the possible punishment and the manner in which an attorney can be of assistance." *Id.* (citation omitted). "Such a determination is made by examining the record as a whole and evaluating . . . the circumstances . . . known to the trial court at the time." *Id.* (cleaned up).

The district court rejected Herrington's argument that his Sixth Amendment waiver was entered unknowingly, reasoning that the Virginia trial court warned Herrington multiple times of the seriousness of his charges, the potential for imprisonment, and the dangers of self-representation, yet he persistently insisted on proceeding pro se. *Herrington*, 2020 WL 5809994, at *3. We agree with the district court.

To start, the Virginia trial court went out of its way to ensure that Herrington was aware of the severity of his charges and the potential punishments, repeating that information in detail at least three separate times. *See* J.A. 226–27, 233–34, 246–47. In so doing, the court consistently emphasized the potential maximum terms of imprisonment. *See, e.g.*, J.A. 226 (the court noting Herrington's charge for obtaining money by false pretense carried the potential "of up to twenty years in prison" and the perjury charges carried the potential for "up to ten years in prison"). True, the trial court did not specify that the charges also carried terms of supervised release, but Herrington himself represented that he read the indictment and was "aware of the range of punishment on each of [his] charges." J.A. 315; *see also* J.A. 247–48 (Herrington affirming that he was "aware of the sentence range for each of [his] charges"). So, to the extent the trial court was

22

required to ensure that Herrington knew of the possibility of supervised release before accepting his waiver, it appears Herrington had that knowledge by his own admission. *See United States v. Fore*, 169 F.3d 104, 108 (2d Cir. 1999) (concluding that the defendant knowingly waived his right to counsel despite the fact that the trial court did not inform him of his potential for supervised release because it had "no doubt" that the defendant was "clearly aware of the significant penalties he would face if convicted" and a "detailed discussion of every allowable component of a potential punishment could detract" from the court's overall duty to warn the defendant of the consequences of self-representation (cleaned up)).

Additionally, the trial court repeatedly warned Herrington of the dangers of self-representation. It explained that he would "be held to the same rules and the same standards as if [he] had counsel," J.A. 248, and that he would "be taking on all of the responsibilities and the role that an attorney would have" such as "decisions concerning procedure and the best way to approach or try a case," J.A. 250. The trial court emphasized that self-representation was "a big risk" and the court needed to ensure that Herrington "underst[ood] the consequences." J.A. 238.

The trial court was not required to detail every risk or explain every potential defense or lesser included offense of a particular charge.[7] It just had to ensure that

---

[7] To argue to the contrary, Herrington relies on our decision in *Lord v. United States Government*, in which we stated that a valid waiver "must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole (Continued)

23

Herrington was aware of the risks of self-representation. *See Iowa*, 541 U.S. at 89 ("Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing[.]" (citation omitted)). And it did that here on several occasions. In the face of such warnings, Herrington assured the court that he was "prepared to represent [him]self and [undertake] all the consequences that go with" such representation. J.A. 249.

We therefore conclude that Herrington knowingly waived his right to counsel and accepted the risks accompanying that decision with open eyes.

C.

Herrington next contends that he did not clearly and unequivocally waive his right to counsel. He asserts that he expressed considerable hesitation about representing himself and that he made it clear that he wanted an attorney but was having difficulty finding one that would take his case. Although it is true that Herrington expressed an initial desire to hire an attorney and indicated to the trial court that he was having trouble finding one, the

---

matter." 412 F.2d 499, 502–03 (4th Cir. 1969) (citation omitted). However, more recently we have clarified that a trial court need not perform such a "searching or formal inquiry" of the defendant's knowledge before concluding that a defendant's waiver is knowing and intelligent. *Ductan*, 800 F.3d at 649 (citation omitted). The defendant simply must be informed of the charges and possible punishments and "made aware that he will be on his own in a complex area where experience and professional training are greatly to be desired." *United States v. King*, 582 F.2d 888, 890 (4th Cir. 1978).

evidence overwhelmingly demonstrates that Herrington subsequently waived his right to counsel.

Indeed, Herrington clearly and unequivocally expressed his desire to proceed without counsel no less than *nine* times in the face of multiple opportunities to change his mind. *See* J.A. 237 ("I'm prepared to go forward and represent myself[.]"); J.A. 245 (The court: "[Y]ou intend to proceed without an attorney; is that correct? Herrington: "Yeah. I'm willing to waive my right to an attorney."); J.A. 249 ("I am prepared to represent myself and all the consequences that go with it."); J.A. 249 ("I would like to represent myself, Your Honor. I'm waiving my right."); J.A. 249–50 (The court: "So you're asking this Court to allow you to waive your right to counsel on thirteen felonies and two misdemeanors; is that correct?" Herrington: "That's correct."); J.A. 318 (The court: "You still want to go forward without an attorney?" Herrington: "Uh-huh. I do."); J.A. 322 (The court: "And you want to continue with that waiver, Mr. Herrington?" Herrington: "Yes."); J.A. 325 (The court: "You fully intend to represent yourself on these felony charges?" Herrington: "I do, Your Honor."); J.A. 329 (The court: "But you want to go forward today representing yourself?" Herrington: "I do."). And, at a later hearing in July 2012, Herrington even acknowledged that he previously waived his right to counsel. *See* J.A. 321–22 (The court: "You have previously waived your right to be represented by counsel, correct?" Herrington: "Yes.").

Not only do these interactions demonstrate unmistakable expressions by Herrington to proceed without counsel, but they also show that the trial court went out of its way to ensure that Herrington actually intended such a result. *See McCormick v. Adams*, 621 F.3d

25

970, 978 (9th Cir. 2010) (explaining that a "repeated insistence of self-representation" in the face of the trial court persistently revisiting the issue "confirm[s] the validity" of a waiver (emphasis omitted)). Regardless of Herrington's clear statements expressing a desire to represent himself, the trial court continued to probe and confirm that he understood the consequences of such a decision. And in response, Herrington consistently and explicitly waived his right to an attorney. Then, going a step further, the trial court offered Herrington the option of receiving appointed counsel without regard to his financial situation, as discussed above. But Herrington declined that offer, choosing instead to represent himself. Such repeated rejection negates any suggestion that Herrington only waived his right to counsel because he was having trouble finding an attorney that would take his case.

If that were not enough, we are further convinced that Herrington unequivocally waived his right to counsel given that he also refused the Virginia trial court's offer of additional time to obtain an attorney. At the February 3rd hearing, the court gave Herrington until March 26th to find an attorney. Three weeks later, Herrington informed the court that he wanted to proceed pro se, so the court held another hearing on February 21st to confirm his decision. At that hearing, due to Herrington's hesitation, the court told him that he could take the agreed upon time—until March 26th—to hire an attorney, assuring Herrington it was not concerned with being delayed. But Herrington declined to do so. In fact, he expressly rejected the offer and affirmatively stated that he was waiving his right to counsel. *See* J.A. 249 (rejecting the court's offer to "keep this case on the docket

26

for March 26th" and stating instead "I would like to represent myself, Your Honor. I'm waiving my right").

Moreover, Herrington consistently rejected the trial court's implication that he desired additional time to hire an attorney, repeatedly stating that he had been willing to represent himself since his initial hearing. *See* J.A. 245 ("I was willing to go forward to represent myself [since the initial hearing], but you wanted me to get an attorney, and I said I would try."); J.A. 255–56 ("I did not ask for additional time. I said I was willing to go forward. You asked if I wanted to hire an attorney. I said I would like to hire an attorney. You said I'm going to give you time to do that."). Given that Herrington complained of the district court's grant of additional time to find an attorney, it seems dubious, to say the least, to now suggest that he never clearly waived his right to counsel.

At bottom, any initial hesitation on Herrington's part cannot defeat the overwhelming evidence demonstrating that he later unmistakably expressed a desire to represent himself.[8]

---

[8] Herrington's circumstances are different than those in which we have concluded that the defendant did not unequivocally waive his right to counsel. For example, in *Ductan*, the defendant informed the trial court only that he did not want a court-appointed attorney and explicitly told the court that "he did not want to represent himself." 800 F.3d at 645. Nonetheless, the district court concluded that the defendant waived his right to counsel by rejecting court-appointed counsel. On appeal, we disagreed, reasoning that although the defendant had put the trial court "in an undeniably difficult position," *id.* at 651, the court should have "insist[ed] on appointed counsel against [the] defendant's wishes in the absence of an unequivocal request to proceed pro se," *id.* at 652. Thus, our focus has consistently been on the existence of an explicit waiver of the right to counsel. *See Fields v. Murray*, 49 F.3d 1024, 1033 (4th Cir. 1995) ("Most significantly, . . . Fields never once expressed any desire to represent himself."). And we continue to adhere to that requirement. In this case, we simply conclude that it was met.

\* \* \* \*

In the face of various warnings and multiple opportunities to change his mind, Herrington repeatedly clearly, unequivocally, and intelligently waived his right to counsel. As a result, the trial court properly chose not to "thrust counsel upon [him], against his considered [and explicit] wish." *Ductan*, 800 F.3d at 648 (citation omitted). We therefore affirm the district court's decision as to Herrington's Sixth Amendment claim.

IV.

Herrington lastly contends that his appellate counsel was ineffective. In considering this claim, we apply the "highly deferential" *Strickland* two-part test, requiring Herrington to show both (1) that counsel's deficient performance "fell below an objective standard of reasonableness" and (2) prejudice, "meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Crockett v. Clarke*, 35 F.4th 231, 242 (4th Cir. 2022) (cleaned up).

Herrington argues that he meets this standard because his appellate counsel failed to argue that the jury was erroneously instructed on the requirements for a conviction for failure to file a tax return. He contends that, applying the proper law, he is actually innocent of that crime.[9]

---

[9] Herrington also argues that his counsel was ineffective for failing to bring a Sixth Amendment argument. For the reasons just discussed, we conclude that his counsel's failure was without prejudice. *See supra* Part III.

28

By way of background, at Herrington's trial, the jury was instructed that an individual is required to file a state tax return if that person's income is over $11,250. The evidence showed that, in 2009, Herrington received $16,736 in unemployment income and $9,543 in rental income. Applying the instruction, the jury convicted Herrington of failing to file a tax return in 2009.

However, the parties now agree that the jury was improperly instructed. Respondent concedes that a state tax return was required in 2009 only if a person's *adjusted gross income* was over $11,250 and that adjusted gross income does not include unemployment income. Excluding his unemployment income, Herrington received only $9,543 in 2009, less than the amount mandating a tax return. So, the parties agree that Herrington is actually innocent of the crime of failing to file a state tax return in 2009.[10]

As a result, the parties also agree that Herrington's appellate counsel's performance fell below an objective standard of reasonableness and his error was prejudicial because, but for his error, the result of Herrington's direct appeal would have been different. The parties therefore acknowledge that Herrington is entitled to some sort of relief. The exact remedy, however, is disputed.

Herrington asserts that, because Respondent concedes the merit of his claim, the Court should grant his petition and vacate his conviction. Respondent contends that the

---

[10] Respondent did not make this concession before the district court and actually disputed the merits of Herrington's argument. For its part, the district court agreed with Respondent and concluded that Herrington's ineffective assistance of counsel argument was therefore without merit.

29

Court should instead allow the Virginia Court of Appeals to determine the proper remedy in the first instance.

We believe Respondent has the better argument. When a § 2254 petitioner brings a successful claim for ineffective assistance of appellate counsel, the petitioner is entitled only to have the opportunity for the state courts to review the merits of the claims that appellate counsel failed to raise. *Payne v. Stansberry*, 760 F.3d 10, 18 (D.C. Cir. 2014) (explaining that the "appropriate relief" in these circumstances "is to afford [the petitioner] a belated appeal on the issue that counsel ineffectively failed to present"); *Roe v. Delo*, 160 F.3d 416, 420 (8th Cir. 1998) (same). As the Sixth Circuit explained, "[t]his remedy avoids unnecessarily interfering with [Virginia's] interest in correcting its own errors." *Mapes v. Tate*, 388 F.3d 187, 194 (6th Cir. 2004). The Virginia Court of Appeals can, in the first instance, determine whether vacatur of Herrington's conviction is necessary and, if it is, whether resentencing is required.

Although we could consider making those determinations ourselves, "the prevailing interests of federalism and comity demand that federal courts exercise restraint when issuing a writ of habeas corpus." *Id.* (italics omitted); *see also Williams v. Taylor*, 529 U.S. 420, 436 (2000) ("[W]e have been careful to limit the scope of federal intrusion into state criminal adjudications and to safeguard the States' interest in the integrity of their criminal and collateral proceedings."). Thus, we reverse this aspect of the district court's decision and remand with directions to issue a writ of habeas corpus unless, within a reasonable period of time set by the district court, Herrington is afforded a new appeal in Virginia in

30

which he may raise his erroneous jury instruction argument omitted from his original appeal.

V.

For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part, and remanded with instructions.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED WITH INSTRUCTIONS*